FIRST NAT. BANK OF WELLINGTON v. HIX et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 21, 1914. Rehearing Denied March 21, 1914.)

1. NEW TRIAL (§ 49*)—MISCONDUCT OF JUROR —ENTERTAINMENT BY PARTY.

Where the foreman of the jury, after the case had been submitted to them and during their deliberations thereon, was entertained by and spent the night with one of the defendants, obtaining meals and bed free of charge, plaintiff's motion for new trial should have been

granted, notwithstanding Acts 29th Leg. c. 18, providing that the court may, in its discretion, grant a new trial for misconduct of the jury.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 97–99; Dec. Dig. § 49.*]

2. BILLS AND NOTES (§ 139*)—RENEWAL NOTE —CONSIDERATION.

H., who owed a bank $600, desiring to have money advanced for the season of 1908, procured sureties to sign his note to the bank for the sum of $1,000. The sureties contended that their note was purely an indemnity to protect the bank to that amount for possible losses by H. in his business for the year 1908. *Held,* that if it was understood between the bank and H. that the $1,000 note should absorb the previous indebtedness of H. to the bank, but the sureties were not aware of that fact, and there was no loss by H. in the year 1908, there was no consideration for a renewal note executed by them to the bank covering such past indebtedness, but executed in the belief that there had been a loss.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 340–354; Dec. Dig. § 139.*]

3. PRINCIPAL AND SURETY (§ 39*)—LIABILITY OF SURETY—MISREPRESENTATIONS.

If the agreement between H. and the bank was that the $1,000 note was for the purpose of absorbing a prior note of H. to the bank and for using the margin as an advancement to H. for his business in the year 1908, the bank could recover notwithstanding representations of H. to the sureties that the $1,000 note was indemnity only for loss during the season of 1908.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 82–85; Dec. Dig. § 39.*]

4. BILLS AND NOTES (§ 139*)—RENEWAL NOTES—CONSIDERATION.

If a note for $1,000 executed by H. as principal with defendants as sureties was one to indemnify the payee for possible losses sustained by H. during the season of 1908, and there was no loss, the note was discharged, and no consideration existed for a renewal note executed by the same parties for an indebtedness owing by H. to the payee for loss for prior seasons under the belief that there had been a loss during the year 1908.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 340–354; Dec. Dig. § 139.*]

Error from Collingsworth County Court; R. H. Cocke, Jr., Judge.

Action by the First National Bank of Wellington against E. M. Hix, as principal on a note, and O. L. Couch and others, as sureties. There was a judgment against the principal defendant and in favor of the sureties, and plaintiff brings error. Affirmed as to defendant Hix, and reversed as to defendants Couch and another.

See, also, 156 S. W. 535.

J. L. Lackey, of Wellington, J. M. Presler, of Memphis, and C. C. Small, of Wellington, for plaintiff in error. R. H. Templeton, of Wellington, and Crudgington & Works, of Amarillo, for defendants in error.

HENDRICKS, J. At the beginning of the cotton season of 1907, the First National Bank of Wellington, Collingsworth county, Tex., furnished the money to E. M. Hix, to purchase cotton for the cotton season of that year. At the expiration of the cotton season, Hix closed his overdrafts at the bank by the execution to the latter of a note for the sum of $604.10, representing his loss. At the beginning of the cotton season of 1908, Hix, desiring to continue the same business, procured three sureties, Couch, Roberts, and Wilkins, to sign his note for the sum of $1,000, payable to the same bank; Hix and the sureties contending in this case that the purpose of the $1,000 note was that of indemnity to protect the bank to that amount for the cotton business for that year in the event of loss by Hix, and the bank asserting that, in accordance with its understanding with Hix, the $1,000 note was for the purpose of discharging the $604.10 note, and the balance, $395.90, was to be used as a margin against his cotton purchases for 1908. At the end of the cotton season of 1908, Hix, as a result of his operations in cotton, had to his credit the sum of $312, which the bank applied upon the $1,000 note, leaving a balance of $688, which latter sum was merged into a new note, executed by Hix, and the same sureties as upon the $1,000 note. This last note was successively renewed several times by Couch and Roberts, as sureties to Hix. Wilkins, on account of his removal from Wellington, refused to execute the first renewal, and this suit is by the bank against Hix, Couch, and Roberts, upon the last renewal.

[1] The sureties, Couch and Roberts, also contend that the first execution of the $688 note was induced by the representations of the bank to the effect that Hix had suffered a loss for the cotton season of 1908, and the successive renewals of said note by them was with the same understanding, carrying out the alleged original purpose of the $1,000 note executed as indemnity for the business of that year; that the cotton business of 1908 realized a profit instead of a loss; and that said note was fraudulently obtained and was without consideration. The bank, plaintiff in error, assigned the following, submitted as a proposition: "The court erred in refusing to set aside the verdict of the jury and the judgment thereon and grant to plaintiff a new trial, because of the fact that one of the jurors who tried the case, to wit, one Westfall, the foreman of the jury, after having heard all the evidence and arguments of counsel and having been given the charge of the court, and after having retired to the jury room and having considered and deliberated on said case, and while the same was still in the hands of the jury, went home with one of the defendants, O. L. Couch, and spent the night with him, and (obtained) supper, bed, and breakfast, free of charge," etc. The objections in the brief of defendant in error—the same criticisms having been leveled to the nine assignments of plaintiff in er-

ror—are untenable as preventing our consideration of the particular specification of error. The assignment is succinct and appropriate, whether considered for the twofold purpose of an assignment and a proposition, and the subjoined statement is apt and sufficiently comprehensive, and neither could be considered as argumentative.

The evidence upon the hearing of the motion for a new trial, without contradiction, sustains the assignment, and the trial court should have vacated the verdict and set aside the judgment.

We believe the Supreme Court of Georgia, in Walker v. Walker, 11 Ga. 205, expressed the true rule in matters of this kind, and the evidence of the actions of the juror and the conduct of the litigant in that case were very similar to the facts here: During a will contest one of the jurors was entertained by the contestant at the latter's home and expense. The court said: "It is true, the affidavit of the juror was produced, in which he states that his verdict was not influenced by the kindness and hospitality of the caveator (contestant); but we place our judgment on the principle of the common law, which we consider a safe and salutary rule. When a juror has been impaneled to try a cause, and during the trial, and before he has rendered his verdict, he shall be entertained, by either of the parties, at their expense, and the verdict be in favor of the party so entertaining the juror, the verdict will be set aside. Graham on New Trials, 96, 97, 98, 99, and cases there cited. This rule is indispensably necessary to preserve the purity and integrity of jury trials in our courts, and cannot be too strictly enforced." (The textbook cited is not accessible to us.)

The case of Ensign v. Harney, 15 Neb. 330, 18 N. W. 73, 48 Am. Rep. 344, discloses that, after adjournment of a trial from Saturday to Monday, two of the jurors requested and obtained from one of the attorneys of the parties, as a favor, the latter's horse and buggy to carry them home and return the following Monday. This proceeding was defended on the ground "that the transaction was open and above board, and not done with the intention of exercising an influence on the jurors, and that in fact it did not have any influence upon them in making up their verdict." The Supreme Court of Nebraska said: "Unless fair-minded, unbiased jurors can be selected, a trial becomes a mere farce, dependent, not upon the merits of the case, but upon extraneous circumstances, such as the bias, prejudice, or interest of the jury. * * * Where a juror is accepted as being impartial, he must remain so during the trial. To permit him to accept favors from either party is to place him under obligations to such party, the tendency of which is to bias his judgment. Nor is it material that such favors were not intended to influence the juror, as it cannot be determined how far they may have had that effect, and such conduct will vitiate the verdict."

Chief Justice Fisher said, in the case of Marshall v. Watson, 16 Tex. Civ. App. 127, 40 S. W. 352, where it was shown that some of the jurors during the trial dined at a restaurant upon the invitation, and at the expense, of one of the parties: "If a practice of this character was permitted to go unchallenged, it would be difficult to draw the line, and say when it should cease, and the best policy to pursue is to prevent it altogether. It is impossible, in cases where questions of this kind arise, to determine whether harm or injury or improper influence resulted, and an effort to ascertain the truth in that respect would be altogether speculative." Numerous authorities are cited by Justice Fisher, sustaining the rule announced in that cause and adopted here, including the authorities more extensively quoted from and cited by us, and additional to which we cite the following cases: Johnson v. Hobart (C. C.) 45 Fed. 542; Perry v. Bailey, 12 Kan. pp. 419, 420; Railway Co. v. Welch, 12 Ind. App. 433, 40 N. E. 650.

The trial court was very probably influenced by that portion of the statute of 1905 on the subject of new trials, reading as follows: "Where the ground of the motion is on account of misconduct of the jury or the officer in charge, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof, and it shall be competent to prove such facts by the jurors or others, by examination in open court; and if the misconduct proven, or the testimony received, or the communication made be material a new trial may in the discretion of the court be granted."

Chief Justice Brown, commenting upon this act, said, in the case of Houston & Texas Central Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606: "* * * We conclude that the 'discretion' expressed in the act * * * is upon the same level with the discretion vested in the trial judge in many instances, and that we may review its exercise wherein it clearly appears that the rights of parties have been disregarded."

The language of the Supreme Court, in the same case following the quoted expression and construed in connection with it, may, upon a cursory consideration, indicate that the court intended to hold that it is in cases where the evidence of the conduct of the jury would leave it reasonably doubtful as to the effect upon the verdict, that a higher court should review the action of a trial court; and hence because the juror in this matter testified he had already made up his mind upon the issues in the cause when he accepted the hospitality of the litigant, and that because the case was not mentioned while as a guest in the home and he was uninfluenced by the entertainment, and the trial court being more

capable of forming a safe conclusion than the appellate court can from the record, his action is not reviewable. The cases cited by appellee in construing the statute and reviewing the previous actions of trial courts in matters of this kind are not parallel to the record here. This is a case of the conduct of the juror and a party to the cause, and, as applied to the case made, courts should not speculate upon the innocence and intentions of the actors. If you did speculate, it would be safe to assume that this juror, if he had made up his mind against the cause of his friend, delicacy would have prevented him from accepting the hospitality and then rendering a verdict in conformity with his conclusions; having made up his mind in favor of his friend, if the other jurors should have presented strong arguments against the cause of the party extending the hospitality, most men would feel some embarrassment in breaking bread with another and then voting against his cause, the litigant presumably believing, and most litigants do, that his cause was meritorious and just. It may be said that this is not the record here, but the answer is that it is the tendency generally upon which the rule is based. These parties may be as innocent as the spoken words assert, and, of course, we do not impute guilt in any sense, but the law condemns the act, however innocent it may be in fact.

If the statute mentioned comprehends the character of case arising here, where a juror and a party to the suit act together, the discretion in the statute is that sound discretion which the common law imposed upon a trial court; as much so as if a successful party to a cause would during the pendency of the trial entertain the whole jury for a week and obtain a verdict and not a word spoken, and each juror swearing that the hospitality of his friend did not enter into the verdict.

[2] In considering the record in this case, we will say that if the $1,000 note was indemnity to the bank for cotton loss for the year 1908, and such was the understanding between Glenn and Hix, and it was understood between them that said note should absorb the previous indebtedness between Hix and the bank, and the sureties, when they signed the $688 note, were not informed, and had no knowledge, that the previous indebtedness of Hix to the bank was attempted to be merged in the note, and were not aware of that fact at the time of the different renewals, and there was no loss for 1908, the note sued upon is without consideration and the jury should be so charged.

[3] If the agreement between Hix and the bank was that the $1,000 note was to be used by the bank for the purpose of absorbing the previous note of Hix to the bank and the balance was to be used by Hix as a margin for the purpose of conducting his cotton business for the year 1908, the bank could recover, though the representations of Hix to the sureties, inducing them to sign the $1,000 note, were that said note was to be used as an indemnity for loss arising from his cotton operations for 1908.

[4] If the $1,000 note was indemnity for loss for 1908 and there was no loss, the note was discharged and the consideration would not exist for the renewal, and it would not be presumed that the sureties signed the renewal note upon a different consideration than existed for the $1,000 note attempted to be merged into the renewal and made the basis of same. When the $1,000 note matured on its face and a renewal was demanded by the bank, unless the sureties were informed, or knew differently, they would have the right to presume that the demand for the execution of said note for $688 represented a loss for that year. As applied to the record presented upon this appeal, the principal issue as to the real agreement between Hix and the bank was not presented to the jury, except by implication. If the court will conform the charge to the facts, there is no real necessity for definitions. We do not mean to intimate that the testimony of two of the sureties, Wilkins and Roberts, as to the statements made by Glenn at the time the first renewal note was executed, were not admissible; but, as applied to this record upon this appeal, the charge of the court conforming to the issues presented by each and applied to the facts we think is all that is necessary.

For the error indicated, this cause will be reversed and remanded as to Couch and Roberts, but affirmed as to Hix; there being no disputable issue as to his liability.