NOVEMBER TERM, 1894. 433

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Welch.

No. 1,460.

## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. WELCH.

MISCONDUCT OF PARTY.—*Boarding Witnesses at Restaurant of a Juror.* —Where a party to an action made arrangements to board all his witnesses (fifteen or twenty in number) at a hotel during the trial, at reduced rates, under which arrangement they took one meal (dinner), and afterwards, on the same day, and before the next meal, the jury having been empanelled and sworn and the statements of the parties made to the jury, plaintiff took his witnesses to a bakery and restaurant owned and operated by one of the jurors, and boarded them there during the continuance of the trial, and of such fact the juror had knowledge; it appearing that plaintiff did not know, when he first went to the restaurant, that the juror was the owner thereof (but whether he learned such fact before he made arrangement with the clerk, or person in charge, to take them there, is not shown),—the circumstances under which plaintiff took his witnesses to the restaurant of the juror throw grave suspicion on him, notwithstanding his explanation (that they went to the restaurant because of the crowded condition of the hotel) seems fair and reasonable, it not clearly appearing that plaintiff did not know the juror was the proprietor thereof before he completed arrangements to take his witnesses there.

SAME.—*Knowledge of Complaining Party.—Reversible Error.*—But because of the failure to show that the complaining party did not have knowledge of such conduct before the close of the trial, such conduct does not amount to reversible error.

PLEADING.—*Absence of Contributory Negligence, When Sufficiently Appears.—No General Averment.*—The absence of the averment of freedom from contributory negligence, in an action for tort, is not a fatal defect, where it appears from the statement of the facts and circumstances under which it occurred, that the plaintiff was without contributory fault or negligence.

SAME.—*Railroad.—Damages.—Nuisance.—Malodorous Freight.—Complaint.*—More must be shown than annoyance and injury by offensive odors from either standing or moving cars close to plaintiff's premises to entitle plaintiff to damages. Abuse of such right must be made to appear, *i. e.*, that cars loaded with malodorous freight were unlawfully or wrongfully suffered to remain near plaintiff's premises an unreasonable length of time.

APPELLATE COURT PRACTICE.—*Error Affirmatively Shown by Complain-*

*ing Party.*—It is the duty of one complaining of error to show, by proper argument and authority, wherein the error consists.

From the Jennings Circuit Court.

*S. Stansifer,* for appellant.
*C. A. Korbly* and *W. O. Ford,* for appellee.

DAVIS, J.—The first question to be determined in this case is whether appellant is entitled to a new trial on account of the misconduct of appellee on the trial in the court below, which resulted in a verdict in his favor.

It appears that on the 20th day of March, 1894, appellee made an arrangement with the proprietor of a hotel in Vernon to furnish meals during the trial to himself and his witnesses at a reduced rate; that on the morning of the 26th of March appellee and his witnesses arrived at Vernon at 8 o'clock, and appellee procured and paid for thirteen tickets for dinner, and appellee and his witnesses took dinner at said hotel on said day, but did not return there for any other meal; that one Granson Osborn keeps a restaurant and bakery in Vernon, and he was called on said jury to fill the place of one of the regular jurors; and that the jury was empaneled and the opening statements were made by counsel in said cause before the noon adjournment on said day; that the cause was finally given to the jury on the evening of the 29th and the verdict returned on the morning of the 30th of March, 1894; that appellee, after dinner on the day said jury was empaneled, took his witnesses to said bakery and restaurant of said juror Osborn for their meals during the continuance of said trial; that appellee, with his witnesses, went to the restaurant on account of the crowded condition of the hotel (whether the restaurant was also crowded does not appear); that at the time appellee went to the restaurant he did not know that said Osborn was the owner thereof, or in any manner con-

nected therewith, and that he did not know the fact until after he had made arrangements with his witnesses to go there (but whether he learned such fact before he made the arrangement with the clerk, or person in charge of the restaurant, to take them there is not shown); that two at least of appellant's employes and witnesses who were in attendance at the trial for the purpose, as stated by appellee in his affidavit, of assisting in managing appellant's side of said case also took their meals at said restaurant during the trial (but what authority, if any, said employes had in connection with said trial or the management thereof, or what they did, if anything, in relation thereto, does not appear); that appellee and the juror had no previous acquaintance, but whether they had any conversation with each other during the trial, is controverted.

It clearly appears by bill of exceptions that all the evidence in relation to this question is embraced in the affidavits incorporated therein.

Giving the affidavits the most favorable construction in behalf of the appellee, as we have done in the above and foregoing statement, the fair and reasonable inference is that if he did not know who was the owner of the restaurant at the time he first went there to see about procuring meals for himself and witnesses, he knew when he made the arrangements for himself and witnesses to take their meals there, or at least before any of them took their first meal at the restaurant, that the juror was the owner thereof, but "that he never thought of influencing said Osborn, or in attempting to influence him as a juror, but simply took his meals there because he could receive better accommodations there, and because it was a public eating house, being patronized by the public generally." In other words, before the jury was empaneled appellee entered into an agreement with

the proprietor of the Sherman House to board and furnish meals to him and his witnesses during said trial at reduced rates and paid for thirteen tickets for dinner, and then after the jury had been sworn and the opening statements made, without saying anything on the subject to the proprietor of the Sherman House, but because, as he says, of its crowded condition he took all of his witnesses, for their meals during the continuance of the trial, to the restaurant kept by one of the jurors.

It is the rule that in order to justify the setting aside of a verdict on account of the misconduct of jurors, such misconduct must be gross and have probably injured the complaining party, but where the misconduct is that of the prevailing party the court will not inquire as to what effect the misconduct had upon the verdict. *Huston* v. *Vail*, 51 Ind. 299; *Drew* v. *State*, 124 Ind. 9; *Louisville, etc., R. W. Co.* v. *Hendricks*, 128 Ind. 462.

It is also the rule that only the improper statements of counsel made in the presence of the court and the adverse party of such a material character as that it appears probable that they were instrumental in obtaining a wrong verdict will authorize a reversal. *Burcher* v. *Scully*, 107 Ind. 246; *Maybin* v. *Webster*, 8 Ind. App. 547.

The rule is also well established that misconduct on the part of any one connected with a trial which is known to and acquiesced in without objection by the party or his counsel, even though it be of a character which might otherwise vitiate the verdict, can not afterwards be made available as a ground for setting aside a verdict. *Waterman* v. *State*, 116 Ind. 51.

In the administration of justice it is of prime importance that litigants should have implicit confidence in the integrity and impartiality of courts and juries. In order to maintain this confidence courts can not be too

strict in guarding trials by jury from improper influence. It should be an inflexible rule of law that no party to a suit can profit by his own misconduct. Conceding, therefore, that appellee acted in good faith and that the juror was not knowingly influenced in his decision by the fact that the appellee and his witnesses took their meals at his restaurant during the trial, the mind of the juror, without intending any harm, might well be unconsciously turned in the direction of the patron who was paying him for meals for fifteen or twenty witnesses each day.

The circumstances under which appellee took his witnesses to the restaurant throw grave suspicion on him. It is true the explanation seems fair and reasonable, but he does not clearly show that he did not know the juror was the proprietor of the restaurant before he completed the arrangement to take his witnesses there. If he knew this fact it is better that he and his witnesses should have suffered inconvenience than that a practice should be sanctioned which is capable of abuse or at least of being the ground of uneasiness and suspicion. The administration of justice should not only be fair and impartial in fact, but the appearance should also be fair and impartial. There should be nothing in the conduct of the parties and jurors to arouse suspicion.

If the attorneys or representatives of appellant having the management of said cause in said court had knowledge of the facts and circumstances in relation to the misconduct of appellee, during the trial, their failure to object thereto seasonably would be regarded as a waiver. A party can not be permitted to lie by after having knowledge of such misconduct and complain only when the verdict becomes unsatisfactory to him.

It does not clearly and affirmatively appear that counsel or any representative having the management of said

cause in said court had such knowledge during the trial. Neither does it appear that appellant, through its counsel and representatives, at the trial, did not know of the alleged misconduct of appellee before the verdict was returned. It does appear, however, that two of appellant's employes and witnesses took their meals at the restaurant at least a part of the time.

In this connection it is proper to say it is not shown in any of the affidavits that counsel for appellant or any of appellant's representatives authorized to assist in the management of said trial, had anything to do with said witnesses and employes of appellant taking their meals at said restaurant. It does not appear that appellant, through its agents or representatives, made any arrangements as to where said witnesses and employes should board, or that appellant paid for their meals, or any of them. So far as disclosed by the affidavits, said witnesses and employes were acting on their own responsibility. The juror knew they were taking meals at his restaurant, and the inference is they knew the juror was the owner of the restaurant, although this fact is not stated. There is nothing in the record to indicate that any of said witnesses and employes of appellant had any interest in the result of the litigation.

The fact that appellee says he acted in good faith, and that his explanation is fair and reasonable, does not necessarily excuse his conduct. Whatever the reasons therefor may have been, the appellee, after the jury was empaneled, should not, under the circumstances, have changed his boarding place from the hotel to the juror's restaurant.

Conceding that he was ignorant of the juror's connection with the restaurant when he first went there, he does not pretend that he was ignorant of this fact at the time the change was actually made. In the light of his own

explanation, the inference is that he was fully advised of these facts before he or any of his witnesses took any meal at the restaurant, and that with full knowledge of all these facts he continued to board them there during the trial without making any effort, during that time, to secure such board at the hotel or any other place. The juror knew that appellee was boarding all of his witnesses at his restaurant.

If it appeared satisfactorily, by affidavit or otherwise, that the counsel and agents of appellant in charge of said cause at the trial had no knowledge of the alleged misconduct of appellee until after the conclusion of the trial, then, under all the circumstances disclosed by the record, we are of the opinion that the misconduct was such as to entitle appellee to a new trial. *Hutchins* v. *State*, 140 Ind. 78; *Danes* v. *Pearson*, 6 Ind. App. 465.

After careful consideration we have concluded, with some hesitation, that because of the failure to show that the complaining party did not have knowledge of such misconduct before the close of the trial, there is no reversible error presented by the record on account of the ruling of the trial court on this question. *Pettibone* v. *Phelps*, 13 Conn. 445 (452); *Cook* v. *Commonwealth, etc.*, 21 Pick. 456 (471); *Tabor* v. *Judd*, 62 N. H. 288; *Buck* v. *Hughes*, 127 Ind. 46.

The complaint is in two paragraphs. The first paragraph contains, in substance, the following allegations:

1. That the plaintiff was the owner of certain real estate in the city of Madison, abutting on Front street, on which there was situate the Western Hotel, in which plaintiff was carrying on the hotel business.

2. That he was the owner of the fee in the north half of Front street, on which his hotel lot abutted and as part of said lot.

3. That defendant's railroad was laid along said Front

street, over and upon the defendant's real estate under-lying said street.

4. That "the defendant, disregarding the plaintiff's rights in and to the enjoyment of said hotel property and the prosecution of his business therein, did, at divers times and days during the three (3) years next before the commencement of this action, move its freight trains, heavily laden and propelled by its enormous plane engines, which will weigh over 56 tons, at a high rate of speed back and forth in front of said hotel and upon said real estate [the fee alleged to belong to appellee because his hotel lot abuts on the street] in a careless and negligent manner, thereby causing the hotel building to jar and violently vibrate and to crack the brick walls and the plastering thereon and loosening the same so as to tear the wall paper and alarm the guests in his hotel aforesaid, and did thereby greatly injure and damage said hotel property and cause the walls thereof to settle, become out of plumb and greatly weakened," etc.

It is also further charged that said locomotives emitted dense clouds of offensive gases and smoke, which were driven by the wind into the plaintiff's hotel, etc., but there is no averment that such annoyances were in any respect the result of the alleged negligence and careless-ness of the defendant. For aught that appears in this paragraph the gases and smoke referred to may have been the usual and natural result of the ordinary operation of the locomotives. Therefore, it is not necessary to further consider these averments.

The third paragraph, after preliminary averments, charges that "the defendants, disregarding the plaintiff's rights in and to the enjoyment of said hotel property and the prosecution of his business therein, did, on the 16th day of June, 1891, and on divers days and nights since said 16th day of June, 1891, and up to the commence-

ment of this action, to wit, on each and every day and night since said 16th day of June, 1891, the defendant carelessly, negligently and unlawfully left cars standing on said railroad track for unreasonable and unnecessary lengths of time in front of and adjacent to plaintiff's said hotel, and the said cars were foul and stinking from the occupancy of the same with hogs and cattle, to and from the distilleries, and from the shipment therein of putrid animals, glue scraps and commercial fertilizers, and the vile and disgusting stenches from said foul cars and their contents were, during said divers times, blown toward and into plaintiff's said hotel, to the great inconvenience and injury of plaintiff and the occupants of said hotel,'' etc.

The next question we will consider is whether the court erred in overruling the demurrer to the first and third paragraphs of the complaint.

Counsel for appellant insists that the first paragraph is insufficient for failure to show that because of excessive weight or its make or kind the engine was unfit and dangerous for that kind of work, or that the speed was unnecessarily great or that the cars were unnecessarily heavily laden, and therefore dangerous in the respect complained of. So far as these objections are concerned the complaint, in our opinion, is sufficient. It is a settled rule of pleading in this State that a general charge of negligence resulting in injury and damage is sufficient against a demurrer. *Ohio, etc., R. W. Co.* v. *McCartney,* 121 Ind. 385; *Louisville, etc., R. W. Co.* v. *Berkey,* 136 Ind. 181 (194); *Hindman* v. *Timme,* 8 Ind. App. 416; *Lake Erie, etc., R. R. Co.* v. *Griffin,* 8 Ind. App. 47.

This rule permits of a general statement of the act which is claimed to have been negligent, and does not require that the particular facts constituting the negligence be averred. *Duffy* v. *Howard,* 77 Ind. 182.

It is next insisted that this paragraph is bad because it is not averred that appellee was free from contributory negligence.

Counsel for appellee contend that this averment in express terms, at least, is not necessary for two reasons:

1. That the action is to recover damages for a nuisance to appellee's real estate, and that such an allegation is unheard of in an action on the case for a nuisance.

2. That it is not necessary to make the allegation in express words that appellee was free from such negligence, but it is sufficient, if it appear from the facts pleaded, that the injury occurred without contributory fault or negligence on the part of the appellee, and that in this case it is evident that he was free from contributory fault or negligence.

The only objection made to the complaint, so far as this question is concerned, is that it does not allege in general terms that the injuries were caused without fault on the part of appellee. Counsel for appellant do not attempt to point out wherein the facts pleaded fail to show that he was free from contributory negligence.

Counsel says that it is not for him "to point out wherein it fails, but for the other side to point out why and wherein the facts pleaded do show that which is clearly tantamount to the technical and all-sufficient averment that appellee was free from fault."

Therefore, counsel declines to discuss the question as to wherein the facts pleaded fail to show that appellee was free from fault. In view of the failure of counsel to make any argument on the proposition, the court might, with propriety, treat the point as having been waived.

In *Rooksby* v. *State, ex rel.*, 92 Ind. 71, the court says: "If the appellants are content to not point out any ob-

jection to the ruling * * we feel content to not search for any." *Baldwin* v. *Threlkeld*, 8 Ind. App. 312 (320).

"It is the duty of appellant to establish error affirmatively." *Toledo, etc., R. R. Co.* v. *Hauck*, 8 Ind. App. 367 (376); *Gish* v. *Gish*, 7 Ind. App. 104.

A fair effort must be made, by discussion or argument, to show that the ruling of the trial court is wrong. *Smith* v. *State, ex rel.*, 140 Ind. 343; *Xenia Real Estate Co.* v. *Drook*, 140 Ind. 259; *Bartlett* v. *Burden*, 11 Ind. App. 419; *Spencer* v. *Spencer*, 136 Ind. 414; *Allen* v. *Northwestern, etc., Co.*, 136 Ind. 608.

In the light of the general statement that the facts alleged do not show that the injury occurred without contributory fault or negligence on the part of appellee, we will consider this question to some extent at least in connection with the other questions discussed.

Whatever may be said of the third paragraph, we are of the opinion that the gist of the action stated in the first paragraph is negligence. *City of Valparaiso* v. *Cartwright*, 8 Ind. App. 429.

The rule is well settled where it is evident from the facts stated that the injury occurred without contributory fault or negligence on the part of the plaintiff, a direct averment that there was no such contributory fault is unnecessary. *Duffy* v. *Howard, supra.*

The rule, however, is that in an action growing out of the alleged negligence of another, it must always be made to appear from the complaint, either by direct averment or by the statement of the facts and circumstances under which the injury occurred, that the plaintiff was without contributory fault or negligence. *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551.

It should be remembered, in this connection, that there is no presumption that appellee was free from contributory fault. In order, therefore, to excuse such aver-

ment, it must clearly and satisfactorily appear, from the facts pleaded, that the injury occurred without contributory fault on the part of the plaintiff. See *Richmond Gas Co.* v. *Baker*, 39 N. E. Rep. 552; *City of Ft. Wayne* v. *Coombs*, 107 Ind. 75.

In *Bedford, etc., R. R. Co.* v. *Rainbolt, supra,* the appellee was a passenger in a train, which, through negligence of the company, was precipitated into White river while passing over an iron or combination bridge built or used by the company. It was held in that case that the absence of the averment that the injury occurred without the fault or negligence of the plaintiff should not be taken as a failure to aver due care, because it appeared, from the statement of the facts and circumstances under which the injury occurred, that the plaintiff was without contributory fault or negligence.

In *Duffy* v. *Howard, supra,* a colt, belonging to the plaintiff, in the possession of the defendant, who was a bailee for hire, was killed by the negligence of the defendant, and it was held that it was evident that there was no contributory fault on the part of the plaintiff, and, therefore, a direct averment that the injury occurred without fault on his part was unnecessary. *Mitchell* v. *Robinson*, 80 Ind. 281; *Scudder* v. *Crossan*, 43 Ind. 343; *Ohio, etc., R. W. Co.* v. *Smith*, 5 Ind. App. 560.

From the averments in the first paragraph of the complaint, it must be taken that the alleged negligence of appellant caused the hotel building to jar and violently vibrate and to crack the brick walls and plastering thereon and loosening the same so as to tear the wall paper, and did thereby greatly injure and damage said hotel property and cause the walls thereof to settle, become out of plumb and greatly weakened, and it must be held from the situation of his property and the circumstances under which the injury occurred, that he

was under no duty except to remain passive. We think it sufficiently appears that all presumptions of negligence on his part are rebutted by the averments of the complaint and that it is certain to a common intent that he was free from any fault which contributed to his injury.

It is manifest that appellee was not bound to move his hotel away from the wrongful jars and vibrations. It is necessarily implied, as it seems to us, from the facts and circumstances alleged as to the cause and nature of the injuries, that appellee was not an actor in causing such injuries, but that he was a mere passive sufferer by reason of such injuries to his property. In any event, counsel having failed to point out wherein the facts pleaded do not show that appellee was free from fault, it will suffice to say that the court does not see wherein the complaint is defective on that ground. The rule of pleading permits the plaintiff to make the express averment that he was without fault or to plead the facts specially showing that he was without fault, and it is incumbent on the demurring party to point out to the court not only that the averment has not been made in express words, but also wherever the complaint fails to show, by necessary implication from the facts pleaded, that he was not free from fault.

In regard to the third paragraph of the complaint, it may be conceded that more must be shown than annoyance and injury by offensive odors from either standing or moving cars. It is of common knowledge that cars loaded with animals, alive or dead, or commercial fertilizers are more or less malodorous. It was the duty of appellant to carry and deliver such freight. In the discharge of this duty appellant had the right to do anything and everything as a common carrier of freight in the operation of its railroad that was reasonably necessary in the transportation, switching and delivery of

said cars to the consignee or to a connecting carrier. In order to show an abuse of this right it must be made to appear, as was done in this case, that cars so loaded were unlawfully or wrongfully suffered to remain near appellee's hotel for an unreasonable length of time.

There was no error in overruling the demurrer to either paragraph of the complaint.

We have carefully read the instructions of the court in the light of the able and exhaustive argument of the learned counsel for appellant, and when considered as an entirety they fully, clearly and accurately state the law.

There are in the course of the instructions two or three expressions which, standing alone, are not strictly correct, but when considered in the connection in which they are used could not, in our judgment have misled or confused the jury. The instructions, to our mind, are unusually clear and comprehensive, and are at least as favorable to appellant as it could reasonably ask.

In some respects we have not been strongly and favorably impressed with the merits of the cause of action and the good faith and conduct of appellee, but we find no error in the record that would justify a reversal.

The evidence, as conceded by counsel, is conflicting, but it is not claimed that there is an entire failure of evidence on any point which it was necessary for appellee to establish in order to entitle him to recover.

Judgment affirmed.

Ross, C. J., absent.

Filed April 30, 1895.