BRINKMAN ET AL. *v.* HOVERMALE, ADMINIS-
TRATOR, ET AL.

[No. 15,418. Filed March 31, 1938. Rehearing denied October 21, 1938. Transfer denied December 30, 1938.]

*John E. Osborn, Charles A. Lowe, Frank Hamilton,* and *Frank H. Wolfe,* for appellant.

*Davidson & Rolfes* and *Turner & Woodfell,* for appellees.

DUDINE, P. J.—This is an action instituted by appellants against appellees to contest the will of Roll T. Brinkman, deceased.

The issues were formed by an amended complaint, a supplemental complaint and answers in general denial. A guardian ad litem was appointed for the minor defendants and said guardian ad litem filed answers in general denial for and in behalf of them.

The cause was submitted to a jury for trial and the jury returned a verdict for the defendants "that said will of Roll T. Brinkman is a valid will." Appellants duly filed a motion for new trial which was overruled and appellants assign said action of the court as the sole error relied upon for reversal.

The causes for new trial presented are: (1) Alleged misconduct of a juror in falsely answering a question asked him by appellants' counsel in *voir dire* examination; (2) alleged misconduct of one of the defendants in inducing the same juror to take him, said defendant, and his daughter, another defendant, to and from court in said juror's automobile one day during the trial of the cause and in so riding with said juror.

The record shows that on *voir dire* examination said juror was asked the following questions with reference to his relation with the defendants and said juror answered as follows:

"Q. And have you had any business transactions with any of them?
"A. No, I guess not.
"Q. Are you affiliated with them in the same church, lodge, or organization?
"A. No sir."

Affidavits were filed in support of said first mentioned alleged cause for new trial and oral evidence was heard by the court on the subject of said juror's relation with the defendants. Appellants contend said affidavits and said oral evidence show that said juror and one of the defendants had been members of the Christian Church of Westport in Decatur County, Indiana, for a long time, and had been "affiliated together and as members of said church, and actively so," and appellants contend further that therefore said juror's answers to said questions on *voir dire* examination were false and misleading, and constituted such misconduct as entitles appellants to a new trial.

The evidence does show that said defendant claimed to be a member of the church of which said juror was a member, but that said defendant attended church only "once in a while . . . in the spring and fall usually and then not very much," that she taught Sunday School once at the church while said juror was superintendent

of Sunday School; that the juror called at said defendant's home once and spoke to her about "collecting for the church."

We approve the language of our Supreme Court in *Foreman* v. *State* (1931), 203 Ind. 324, 329, 330, 180 N. E. 291, which is as follows:

". . . the law plainly entitled litigants to impartial, unbiased persons for jurors, and secondly, the right to peremptory challenges, the number depending upon the character of the case.

". . . The rights of litigants, as affected by untruthful answers of jurors on their *voir dire* examination, have been before the courts many times and under varying circumstances. From the decisions examined, we draw the general conclusion that a juror's failure to make full and truthful answers to questions asked him on his *voir dire* examination concerning his relation to parties litigant and to others directly or indirectly interested in the outcome of the litigation, is misconduct, and will be regarded as prejudicial for the reason it impairs the *parties'* right to challenge."

See statements to the same effect in *Pearcy* v. *The Michigan Mutual Life Ins. Co.* (1886), 111 Ind. 59, 12 N. E. 98; *Johnson et al.* v. *Tyler et al.* (1890), 1 Ind. App. 387, 27 N. E. 643.

That such a rule is recognized generally by the courts is clear, but the result to be reached, when such rule is applied, is not always clear. In many cases it is quite difficult to determine whether the juror's answers were "full and truthful" as required by said rule. Whether or not a juror's answers to such questions on *voir dire* examination are "full and truthful" is a question for the trial court to determine from the evidence submitted to it. The overruling of the motion for new trial in the instant case indicates that the trial court found that said answers were "full and truthful," as required by said rule.

Words must be given their ordinary meaning unless

it is shown that a different meaning is intended. There is no showing that a different meaning of the word "affiliated" was intended when appellant's counsel asked the juror whether he was "affiliated" with the defendants "in the same church, lodge or organization." The word affiliate *"usually"* means "to bring or receive into close connection, to ally." (Webster's New International Dictionary.) We think the evidence fails to show conclusively that the juror was "affiliated" with the defendant, within the ordinary meaning of that term, that the evidence sustains the finding of the trial court that said juror's answers were "truthful" as is required by said rule announced in *Foreman* v. *State, supra.*

Said rule requires juror's answers on *voir dire* examination to be not only truthful but "full" as well. (See *Pearcy* v. *The Michigan Mutual Life Ins. Co., supra.*)

In the *voir dire* examination of said juror, in answer to questions proposed by appellants' counsel, said juror testified explicitly that he was acquainted with all the defendants, that he lived about one and a half miles from said defendant who attended said church. There is no evidence in the record which shows or tends to show that said juror attempted to "cover up" any relation between him and any of the defendants. The evidence shows that said answers were not "half-truths" which were likely to mislead counsel and induce him to refrain from exercising a peremptory challenge which he would have exercised if more complete answers had been made. Having in mind all the *voir dire* examination of said juror and all the evidence introduced on the subject of his relation with the defendants we hold there is ample evidence in the record to sustain the trial court's finding that said juror's answers were "full" as required by said rule.

Appellant cited *Foreman* v. *State, supra; Pearcy* v. *The Michigan Mutual Life Ins. Co., supra,* and *Johnson et al.* v. *Tyler, supra,* in support of their said contention. The facts in each of said cases distinguish them from the instant case and make the decision in each of said cases inapplicable here.

The evidence submitted on the subject of said juror's alleged misconduct in conveying two of the defendants to and from court in his automobile and on the subject of said defendants' misconduct in so riding in the juror's automobile conclusively shows the following:

The cause was tried in Greensburg, Indiana. Said juror lived out in the country about fifteen miles from Greensburg. Said defendants John Hovermale, who was administrator with the will annexed of the estate of the decedent, and Ruth Hovermale, said administrator's thirteen-year-old daughter, lived about seventeen miles from· Greensburg and about two miles beyond the juror's home. The trial lasted several days. In the evening of the second day of the trial before the completion of the evidence but after adjournment of court said defendant administrator broke the crank shaft of his automobile. He had been attending the trial each day and had used said automobile as his means of conveyance. The next morning he came to the juror's home and told him about breaking the crank shaft in his automobile and asked the juror to take him and his daughter to Greensburg and bring them back that day. The juror told them he would take them if they would not discuss the case. With such an understanding the juror did take said defendants to Greensburg. As soon as they got to Greensburg the juror told the trial judge about bringing the defendants to Greensburg, and the judge told him "it was not the right thing to do and not do it again." That evening the juror took the defendant back in his car to a point about one mile from their home, from

whence the defendants walked home. Nothing was said about the cause while said defendants and said juror were so associated.

Appellants emphasize the distinction between misconduct of a juror in which a prevailing party litigant is implicated and such misconduct in which no litigant is implicated. We believe appellants admit that when no prevailing party litigant is implicated in such misconduct, courts must not only find the juror guilty of misconduct, but must also find that the misconduct probably affected the verdict. Appellants contend however, "Where the misconduct is that of the prevailing party, . . . the court will not constitute an inquiry as to the *probable effect* of such misconduct upon the verdict . . ." (Our italics.) Citing *Davis* v. *State* (1871), 35 Ind. 496; *Huston* v. *Vail* (1875), 51 Ind. 299; *P. C. C. and St. L. Rwy. Co.* v. *Welsh* (1894), 12 Ind. App. 433, 40 N. E 650; *Hutchins* v *State* (1894), 140 Ind. 78, 39 N. E. 243.

*Davis* v. *State, supra,* is not in point and does not support said contention. (See further reference to said authority in this opinion.)

*Hutchins* v. *State, supra,* was a criminal case in which appellant was tried by jury and convicted of rape. On appeal alleged misconduct of a deputy prosecutor, in privately speaking to a juror and thus offering to perform an errand for the juror was set up as a cause for new trial. In a discussion of this matter our Supreme Court said in that case (p. 81), "Whether a judgment ought to be reversed for the foregoing causes (misconduct of juror in which deputy prosecutor was implicated) might perhaps depend upon the case presented in the record. If it appeared clear, beyond all question from the evidence, that the prisoner was guilty as charged, it may be that the misconduct referred to, even the gross impropriety of the deputy prosecutor's action,

ought not to be considered ground sufficient to set aside a verdict which was just and proper beyond any reasonable doubt.

"If, however, it were at all a debatable question whether the prisoner was guilty, we think that a verdict against him should be at once set aside and a new trial granted."

Then the Supreme Court proceeds to discuss the evidence and concludes that the question of the prisoner's guilt was debatable, and orders a new trial.

It is apparent that that case does not support appellants' said contention. In fact it is authority against said contention.

*Huston* v. *Vail et al., supra,* cited by appellants, was a suit by appellant against appellees to foreclose a mortgage. Several paragraphs of answer of payment and set-off were filed, and a jury trial was had which resulted in a verdict in favor of John B. Vail, the defendant below, for $297.37 against appellant. On appeal alleged misconduct of said John B. Vail in inviting two jurors to take a drink of intoxicating liquor with him in a saloon and conduct of jurors incidental to and pursuant to such invitation, all while said trial was in progress but in the evening after the adjournment of court is presented as a cause for new trial.

The Supreme Court in discussing said matter referred to *Davis* v. *The State, supra,* as follows (p. 304): "In that case the bailiff took two of the jurors to a drinking saloon and procured for each of them 'a drink of brandy, ginger, wine, nutmeg and sugar,' which one of the jurors paid for. This was held to vitiate the verdict."

Following that the court said in *Huston* v. *Vail, supra* (p. 304): "The case before us is still stronger, for there the misconduct was on the part of the bailiff and two of the jurors; and here it is on the part of the prevailing party. . . . The authorities are not uniform

where the alleged misconduct is on the part of the jury or persons not parties to the suit, as to whether it must be further shown that the verdict was thereby affected, but where the misconduct is on the part of the prevailing party, there is no conflict in the authorities. In such cases the court will set aside the verdict at once without any inquiry as to what effect the misconduct had upon the verdict."

We assume appellants rely on that language of the Supreme Court. It should be noted that the decision of that case was not based primarily on the fact that defendant Vail, a prevailing party litigant, was implicated in the alleged misconduct of the jury. The opinion shows clearly that said decision was based primarily upon the fact that the evidence was sufficient to arouse grave suspicion that Vail intended by such conduct to influence the juror, and Vail's testimony *did not clear him of such suspicion.* The court said on that subject (p. 303) : "The facts stated in the affidavit throw grave suspicion on the prevailing party, and it does not seem to us that they have been fairly and fully answered. True, Vail swears that he has been guilty of no misconduct towards the jury in said cause, but this is simply his judgment of the matter, in a case where he is greatly interested. The law must be the judge, not the affiant. He should have stated facts, without evasion or equivocation, which are not capable of two meanings, or which have no meaning at all. His statements by no means preclude the facts that he did treat the juror or cause it to be done or tamper with him indirectly, they simply go to the fact that he never invited him to drink intoxicating liquor with him. . . ." That decision is therefore not controlling here.

It should be noted too that the Supreme Court cited no authorities in support of said rule of law that in cases where prevailing parties litigant are implicated in

alleged misconduct of a juror, the courts will set aside the verdict without inquiry as to what effect the misconduct had upon the verdict.

*P. C. C. and St. L. Rwy. Co.* v. *Welch, supra,* cited by appellant, states the same rule and cites *Huston* v. *Vail, supra; Drew* v. *State* (1889), 124 Ind. 9, 23 N. E. 1098; *Louisville, etc., Rwy. Co.* v. *Hendricks* (1891), 128 Ind. 462, 28 N. E. 58, as authority. *Drew* v. *State, supra,* does not support such rule. It is authority against such rule. *Louisville, etc., Rwy. Co.* v. *Hendricks, supra,* is not in point.

It should be noted that the decision in *P. C. C. and St. L. Rwy. Co.* v. *Welch, supra,* is based on the fact that the appellant, who complained of alleged misconduct of the jury in which appellee was implicated, failed to show that it, appellant, did not have knowledge of such misconduct before the close of the trial. Therefore that decision is not controlling here.

We do not think that said rule of law, as stated in *Huston* v. *Vail, supra,* is supported by the decisions of our Supreme Court prior thereto, or that it has been adopted as controlling authority by any later decisions of our Supreme Court or this court.

Much has been said by our courts about the sacredness of the rights of litigants to a trial by impartial, unbiased jurors and that matter can not be overemphasized. It would serve no good purpose, however, to give reasons why said right should be held so sacred; a discussion thereof would be merely a reiteration of what has been said by the courts and would serve only to prove a point which is accepted generally by the courts throughout the land. See *Pearcy* v. *The Michigan Mutual Life Ins. Co., supra; Johnson et al.* v. *Tyler et al., supra.*

Our view of the specific question for determination—whether or not judgment in the instant case should be

reversed and a new trial ordered on account of said misconduct of said juror and defendant, is similar to the view of the Supreme Court of Alabama as expressed in *Alabama Power Co.* v. *Hall* (1925), 212 Ala. 638, 103 So. 867, 906, a similar case.

That was an action by M. C. Hall as executor of the will of R. Cantelon, deceased, against appellant for wrongful death of the testator. Trial by jury was had resulting in a verdict for plaintiff. Judgment was rendered against appellant and appellant appealed having set up as a cause for new trial alleged misconduct of a juror in accepting transportation in plaintiff's automobile.

We quote from the case as follows (pp. 643, 644):

"The evidence reasonably established the following conditions: The jurors, after deliberating some hours without reaching a verdict, were, at about 2 o'clock a. m., instructed to disperse and go home until next morning. On leaving the courtroom, the juror openly, and in the presence of representatives of defendant company in attendance upon the trial, asked plaintiff if he was going home; plaintiff answered in the affirmative; the juror then asked to ride with him, and plaintiff agreed; they then walked on out of the courthouse to plaintiff's car, when the juror got in the car and rode away. The inference is fairly drawn that plaintiff's son drove the car and carried the juror from the city of Montgomery to his home, some 7 miles in the country. It does not appear that plaintiff was asked to or did go out of his way, incur any extra expense, labor, inconvenience, or delay.

"The incident involves conduct of both a party and a juror. The law is very jealous of any conduct of parties, or those who represent them, tending to show an effort to influence the verdict of a jury. Voluntary and unusual attentions and courtesies are often deemed such misconduct. The law does not stop to inquire whether the wrongful conduct has influenced the jury. If it evinces a purpose so to do, this is such corrupt practice that, as a matter of public policy in the clean administration of

justice, the party will be penalized by setting aside his verdict. (Citing authorities.)

"The conditions here shown do not import any voluntary seeking opportunity to do the juror a favor. The request was made by the juror. This fact would not excuse a manifest entering into relations wrongful within themselves. The act must, however, be viewed in the light of conditions. A juror released at 2 o'clock in the morning, under the necessity to find transportation home or lodgment at that hour, makes a request which, but for his relation as a juror, was in no sense unusual, but an ordinary neighborly act, involving no expense. To refuse it was to manifest an uncivil indifference, or make explanation questioning the conduct of the juror.

"The request of the juror should be viewed in the same light. While it may evince an absence of a keen sense of propriety in avoiding all grounds of suspicion, it should be viewed with a just regard to the circumstances. The right-minded man, judge or juror, expects to return ordinary courtesies in kind, resents the thought of so doing by inflicting a wrong upon another, and assumes as of course that he is not expected so to do.

"We do not find here that misconduct on the part of plaintiff, or that corruption or bias on the part of the juror, which, in all fairness, calls for setting aside the verdict. *The solemn findings of a jury, selected according to law and rendered upon oath, should be disturbed only for substantial cause.* (Citing authorities.)"

We note that in that case the juror asked to ride in and rode in the prevailing parties' automobile, while in the instant case the prevailing party asked to ride in and rode in the juror's automobile, but we think that difference in facts make our case stronger than the Alabama Power Co. case. There is less likelihood of suspicion that a juror is being influenced when the prevailing party has asked and receives from the juror a favor than there is when a juror has asked and receives from the prevailing party a favor. In all other respects the facts in the two cases are simi-

lar in legal effect. The reasoning of that court shown in the excerpt of that case which we have quoted is applicable to the facts in this case, and is sound. For similar decisions see *John J. Bonnet et al.* v. *Henry O. Glattfeldt* (1887), 120 Ill. 166, 11 N. E. 250; *Midland Valley Rwy. Co.* v. *Barkley* (1927), 172 Ark. 898, 291 S. W. 491; *Ford* v. *Holmes* (1878), 61 Ga. 419; *Hilton* v. *Southwick* (1840), 17 Me. 303, 35 Am. Dec. 253; *Missouri Pac. Rwy. Co.* v. *Bowman* (1904), 68 Kansas 489, 75 Pac. 482.

We therefore hold that no reversible error has been shown.

Judgment affirmed.

Note: See Thompson on Trials Vol. 2, 2d Ed., Sec. 2565 to the effect that parties litigant are not required to deny jurors the "usual and customary offices of hospitality and civility," but "unusual civilities and attention practiced by the successful party, his counsel or partisans, such as excite a suspicion as to the motive of the party will . . . require the granting of a new trial." See Sec. 120 R. C. L. on subject of Misconduct of Jury generally.