

**FILED**

Sep 24 2015, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy P. Broden<br>Lafayette, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kastin E. Slaybaugh,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | September 24, 2015<br><br>Court of Appeals Case No.<br>79A02-1411-CR-798<br><br>Appeal from the Tippecanoe Superior Court<br><br>Lower Court Cause No.<br>79D02-1401-FB-1<br><br>The Honorable Thomas H. Busch, Judge |

**Pyle, Judge.**

## Statement of the Case

[1] In this case, we are called to review a novel issue in Indiana—whether a juror, who was apparently not asked about her Facebook usage or friendships, engaged in juror misconduct when she did not disclose during voir dire that a witness's relative was among her expansive list of Facebook friends.

[2] Kastin E. Slaybaugh ("Slaybaugh") appeals his conviction, following a jury trial, for Class B felony rape.[1]  After trial, but before sentencing, Slaybaugh filed a motion for mistrial based on alleged juror misconduct.  Specifically, Slaybaugh alleged that one of the jurors may have lied during voir dire about not knowing the victim, and he based his allegation on the fact that the victim's sister was one of the juror's Facebook friends.  Upon the trial court's order, the parties conducted a deposition of the juror, who testified that she did not recognize the victim's name during voir dire, did not recognize her when she testified, and did not know the victim.  The juror also testified that she had more than 1,000 Facebook friends and that she did not personally know all of her Facebook friends.   After holding a hearing and considering the juror's deposition as well as Facebook materials and affidavits submitted, the trial court determined that the juror was truthful in her assertion that she had no knowledge of the victim or her family and denied Slaybaugh's motion for mistrial.

[3] On appeal, Slaybaugh challenges the trial court's denial of his post-trial motion for mistrial, claiming that the trial court erred by determining that the juror truthfully stated that she did not know the victim.  Concluding that Slaybaugh failed to show that the juror engaged in misconduct (let alone gross misconduct that likely harmed him) and that his challenge on appeal is nothing more than a

---

[1] IND. CODE § 35-42-4-1(a).  We note that, effective July 1, 2014, a new version of the rape statute was enacted and that Class B felony rape is now a Level 3 felony.  Because Slaybaugh committed his crime in January 2014, we will apply the statute in effect at that time.

request to reweigh the trial court's credibility determination, we affirm the trial court's denial of Slaybaugh's motion for mistrial.

[4] We affirm.

## Issue

Whether the trial court abused its discretion by denying Slaybaugh's post-trial motion for mistrial based on alleged juror misconduct.

## Facts[2]

[5] In January 2014, Slaybaugh was staying in the garage of his friend, Jenelle Bader ("Bader"). On January 16, 2014, Slaybaugh and K.W. were hanging out in the garage. K.W. had known Slaybaugh for approximately seventeen years and had been childhood friends with his younger sister. During that evening, Slaybaugh and K.W. "drank vodka" and "smoked some spice." (Tr. 73). Bader later went into the garage and observed that K.W. was "[h]eavily" intoxicated. (Tr. 29). K.W. passed out, Bader left the garage, and Slaybaugh then had sex with K.W. When Bader returned to the garage approximately thirty minutes later, she found Slaybaugh, naked and sitting at the end of a sofa with a blanket around him. K.W. was unresponsive on the sofa with her pants off and her knees up by her shoulders. Bader then called the police.

---

[2] Slaybaugh does not challenge the sufficiency of the evidence supporting his conviction; therefore, we will not include a detailed recitation of the facts of his offense.

[6] The State charged Slaybaugh with Class B felony rape, specifically alleging that Slaybaugh had sexual intercourse with K.W. when she was "unaware that the sexual intercourse was occurring[.]" (App. 53). The trial court held a jury trial on August 26-27, 2014. During the trial, K.W. testified that she remembered drinking vodka and smoking spice with Slaybaugh, but she did not remember anything else until she woke up in the hospital. The jury found Slaybaugh guilty as charged, and the trial court entered judgment of conviction.

[7] The day after the trial and subsequent days thereafter, Slaybaugh's mother, Katina Slaybaugh ("Katina"), emailed Slaybaugh's trial counsel, J. Michael Trueblood ("Attorney Trueblood") and his investigator, Bill Lindblom ("Lindblom"). In her emails, Katina expressed her concern that one of the jurors, Juror #2767 or Juror K.A. ("the Juror"), may have lied during voir dire about not knowing the victim, K.W. Katina's allegation was based on a search of Slaybaugh's Facebook profile and his list of Facebook "friends." Specifically, Katina stated that the Juror was a Facebook friend of one of Slaybaugh's Facebook friends, Zach Anderson ("Zach"), whom she believed to be a step-sibling of K.W. Katina also alleged that the Juror was a Facebook friend of Stephani Anderson ("Stephani"), who was a step-sibling of K.W. Katina also emailed screenshots from the Facebook profiles of the Juror, Zach, and Stephani. Lindblom responded to Katina and informed her that Attorney Trueblood would look into the information.

[8] Thereafter, on September 4, 2014, Katina sent a letter to Amy Hutchinson ("Attorney Hutchinson"), who was Slaybaugh's defense counsel from another

offense. In this letter, Katina complained about Attorney Trueblood's representation of Slaybaugh at trial, and she stated that she thought that the Juror was friends with or related to K.W.'s siblings and that the Juror had committed "possible perjury[]" by claiming that she did not know K.W. (Supp. App. 85). Katina also sent a copy of this letter to the trial judge presiding over Slaybaugh's rape case.

[9] On September 15, 2014, the trial court entered an order ("September 15 Order"), directing Attorney Hutchinson and Attorney Trueblood to review Katina's letter and file a response with the court within thirty days. On September 17, 2014, Attorney Trueblood responded to the trial court's September 15 Order. In his response, Attorney Trueblood stated that he had reviewed the emails and Facebook information that Katina had submitted to him and had "determined that there was insufficient credible information to raise an allegation of Juror Misconduct" because the Juror "swore no knowledge" of K.W. or any individual identified as a potential witness during voir dire. (Supp. App. 28). He also pointed out that the Juror "did not indicate any knowledge" of K.W. when she took the witness stand and testified at trial. (Supp. App. 28). Attached to the response, Attorney Trueblood submitted copies of the emails between himself and Katina, the Facebook photographs, and information that she had emailed him.

[10] Thereafter, on September 24, 2014, Slaybaugh, represented by Attorney Hutchinson, filed a Motion for a Mistrial Based on Juror Misconduct and to Set Aside the Verdict ("motion for mistrial"). In this motion, "Slaybaugh and his

family . . . respectfully move[d] th[e] Court to review the issue of juror misconduct, to conduct a hearing, and to declare a mistrial and set aside the verdict and grant the defendant a new trial." (Supp. App. 17).[3] The crux of Slaybaugh's motion for mistrial was that the Juror had committed misconduct because she did not reveal during voir dire or at trial that she knew K.W. In support of his motion, Slaybaugh attached the following to his motion: (1) forty-seven pages of screenshots from the Facebook pages of K.W., the Juror, Zach, and Stephani; (2) affidavits from Slaybaugh,[4] his mother, his sister, and a fellow inmate; and (3) a copy of Attorney Trueblood's response to the trial court's September 15 Order and the attachments to that response.

[11] On September 25, 2014, the trial court held a hearing on Slaybaugh's motion for mistrial. Thereafter, the trial court ordered the parties to conduct a deposition of the Juror. After the hearing, the trial court, on its own motion, found that Slaybaugh's motion for mistrial contained confidential information and sealed the relevant information. The trial court, however, did not seal the

---

3 Slaybaugh's Supplemental Appendix contains documents that were subject to a trial court order excluding them from public access. As such, this Supplemental Appendix was filed on green paper and marked as "Not for Public Access." *See* Ind. Admin. Rule 9. We have attempted to exclude such matters from this opinion. However, to the extent such matters are included in this opinion, we deem such information to be "essential to the resolution of [the] litigation" or "appropriate to further the establishment of precedent or the development of the law." *See* Admin. R. 9(G)(3); 9(G)(7)(a)(ii)(c),(d).

[4] In his affidavit, Slaybaugh averred that the Juror was Facebook friends with K.W.'s siblings; that he and the Juror had 116 mutual Facebook friends; and that he believed the Juror was "biased" because she was Facebook friends with K.W.'s sister, Stephani, who he stated had posted about the trial. (Supp. App. 26).

actual motion; submitted legal authority; affidavits from Slaybaugh's sister, mother, and fellow jail inmate; and Attorney Trueblood's response.[5]

[12] On October 8, 2014, Katina sent a letter to the trial court, stating that she was concerned because the Juror was in both Slaybaugh's "circle of friends" and K.W.'s "circle of friends" on Facebook. (Supp. App. 6). Katina also wrote that she was concerned because her oldest daughter went to school with the Juror from kindergarten to 6th grade.[6]

[13] On October 9, 2014, the parties conducted a deposition of the Juror. During the deposition, the Juror testified that she had over 1,000 Facebook friends but that she did not personally know all of these people. She testified that she was a realtor and that she had "friended" most of her 1,000 plus Facebook friends for "networking" purposes. (Supp. App. 12). The Juror also testified that she did not know Stephani or Zach, but she acknowledged that she "could be" friends with Stephani on Facebook. (Supp. App. 13). Additionally, the Juror testified that she did not read all of the posts from her more than 1,000 Facebook friends and that she used Facebook to post on her own profile and to "network" and "post on [her] business page[.]" (Supp. App. 13). The Juror testified that she did not know K.W. before or during trial. She confirmed that she had told the

---

[5] We note that, on appeal, Slaybaugh has submitted his motion and these non-sealed materials on green paper in his Supplemental Appendix.

[6] The State filed a motion to strike this letter. The trial court ruled that the letter would be sealed until Slaybaugh decided if he was going to rely on this letter in support of his motion for mistrial. If he did not rely upon it, the trial court stated that it would strike it; however, if Slaybaugh did rely upon it, it would remain under seal.

trial court during voir dire that she did not know K.W.[7] She also testified that she did not know K.W. or recognize her when she testified at trial. Finally, the Juror, who went to Lafayette Jefferson High School, stated that she did not know Slaybaugh, who apparently was in a younger class at the high school, and that she had not heard about him.

[14] On October 14, 2014, the State filed a response to Slaybaugh's motion for mistrial and attached a copy of the Juror's deposition. In its response, the State asserted that "the juror has adamantly stated that she did not know the victim prior to the trial[] and does not know of any connection to her whatsoever[,]" and "the juror has now sworn twice under oath that she has no knowledge of the victim in this case." (Supp. App. 9). The State also argued that the trial court should deny Slaybaugh's motion because he had failed to meet his "burden of proving that jury misconduct occurred, that it was a gross violation, and that it probably harmed" him. (Supp. App. 9).

[15] On October 16, 2014, the trial court held a second hearing on Slaybaugh's motion for mistrial. That same day, Slaybaugh filed a motion, requesting the trial court to consider Katina's October 8 letter and a deposition from Amanda Jasper (Ritchie) ("Amanda"), who went to school with Slaybaugh and who was a Facebook friend of Slaybaugh, K.W., K.W.'s siblings, and the Juror. In this deposition, Amanda testified that, before trial, she saw that K.W. and her

---

[7] The record on appeal does not contain a transcript from voir dire; however, the Juror's deposition testimony provides information about some of the questioning that occurred during voir dire.

siblings made "very vague" comments with "no detail about anything" that "it was going to be a long road" and that "they were going to make sure that what happened to her was taken care of." (Supp. App. 3). Amanda also testified that she read Facebook posts about a warrant for Slaybaugh when he was a fugitive and that he was going to trial. However, she did not see whether the Juror had ever commented on the posts.

[16] Thereafter, the trial court denied Slaybaugh's motion for mistrial, finding that "the juror in question truthfully stated that she had no knowledge of the defendant, the victim or the family of either." (App. 20). Thereafter, the trial court sentenced Slaybaugh to fifteen (15) years in the Department of Correction. Slaybaugh now appeals.

# Decision

[17] On appeal, Slaybaugh does not challenge the sufficiency of the evidence supporting his conviction or the propriety of his sentence. Slaybaugh's sole issue is that the trial court abused its discretion by denying his post-trial motion for mistrial based on alleged juror misconduct. Slaybaugh does not cite a standard of review for this issue. Instead, he merely challenges the trial court's finding that the Juror truthfully stated that she had no knowledge of the victim, K.W., and he asserts that the "Facebook pages negate [the Juror's] assertions that she was not familiar with K.W." (Slaybaugh's Br. 5). Relying on *Brinkman v. Hovermale*, 106 Ind. App. 70, 13 N.E.2d 885 (1938), Slaybaugh contends that the Juror's failure to reveal this relationship during voir dire

equates to misconduct that will automatically be regarded as prejudicial and entitle him to a new trial.

[18] We agree that, under "certain circumstances, '[t]he failure of a juror to disclose a relationship to one of the parties may entitle the prejudiced party to a new trial.'" *Stephenson v. State*, 864 N.E.2d 1022, 1055 (Ind. 2007) (quoting *Godby v. State*, 736 N.E.2d 252, 256 (Ind. 2000), *reh'g denied*) (other citations omitted) (alteration in original), *cert. denied. See also Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988) ("Generally, proof that a juror was biased against the defendant or lied on *voir dire* entitles the defendant to a new trial."). However, "[t]o obtain a new trial based on a claim of juror misconduct, the defendant must demonstrate that the misconduct was gross and likely harmed the defendant." *Stephenson*, 864 N.E.2d at 1055. *See also Ramirez v. State*, 7 N.E.3d 933, 938, 939 (Ind. 2014) (referring to the standard of review for juror misconduct as the "probable harm standard" and explaining that a defendant must show that the misconduct was "'gross and probably harmed' the defendant") (quoting *Henri v. Curto*, 908 N.E.2d 196, 202 (Ind. 2009)).[8] We review a trial court's ruling on juror misconduct and the denial of a motion for a mistrial for an abuse of discretion. *See Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001); *Lopez,* 527 N.E.2d at 1130.

[19] In this case, we are called upon to review an issue of first impression in Indiana—whether a juror, who was apparently not asked about her Facebook

---

[8] In *Ramirez*, our Indiana Supreme Court discussed the presumption of prejudice in juror taint cases and clarified the standard of review for that type of case. Because this case involves juror misconduct, we will apply the "probable harm" standard.

usage or friendships, engaged in juror misconduct when she did not disclose during voir dire that the victim's relative, who had a different last name than the victim, was among her expansive list of Facebook friends. Given the prevalence of Facebook and the sheer number of people who use it,[9] it should come as no surprise that a juror's Facebook use would be at the heart of an appeal. While we have numerous cases—both criminal and civil—in which a person's Facebook use (including posts or comments made thereon) has been discussed in terms of an evidentiary issue or just comprising part of the underlying facts, we have not had the opportunity to review the issue at hand.

[20] We find guidance, however, from our sister state of Kentucky, which has confronted and addressed this issue of alleged juror misconduct based on a juror's list of Facebook friends. In *Sluss v. Commonwealth*, 381 S.W.3d 215 (Ky. 2012), the defendant, after smoking marijuana and taking multiple prescription drugs, crashed his pickup truck into an SUV, killing an eleven-year-old girl and injuring three others. *Sluss*, 381 S.W.3d at 217. The case was the subject of much publicity, both in the news outlets and on social media websites such as Facebook. *Id.* at 218. The trial court, therefore, "conducted individual voir dire about the publicity surrounding the case in addition to the usual general voir dire." *Id.* at 221. During the general voir dire, the trial court asked the jurors if they knew the victim or the victim's family. *Id.* During the individual

---

[9] As of June 30, 2015, Facebook had 1.49 billion monthly active users. *See* http://newsroom.fb.com/company-info/ (last visited August 31, 2015).

voir dire, the trial court asked the jurors if they were Facebook users or had seen anything on Facebook about the case, but it did not directly ask them if they were Facebook friends with the victim's mother. *Id.* A jury convicted the defendant of murder and other offenses, and the trial court sentenced him to life in prison. *Id.*

[21] After trial, the defendant filed a motion for a new trial, arguing that there was juror misconduct based on two of the jurors' Facebook friend statuses. *Id.* at 220-21. He alleged that jury foreperson and another juror may have been friends with the victim's mother, and he presented screenshots of a Facebook page to show that two people with the same names as the two jurors were among the victim's mother's 2,000 Facebook friends. *Id.* at 221. He also presented screenshots of the victim's mother's Facebook page, which contained information about her child's death. *Id.* The record also showed that these jurors, when asked during voir dire, stated that they did not know the victim or her family or the circumstances of the case. *Id.* Additionally, one of the jurors had acknowledged during voir dire that she had a Facebook account, while the other denied that she did. *Id.* The trial court, without holding a hearing or questioning the jurors, denied the defendant's motion. *Id.*

[22] On appeal, the defendant argued that the "mere fact that each of the jurors was a 'Facebook friend' with [the victim's mother] create[d] a presumption of juror bias[.]" *Id.* at 222. The Kentucky Supreme Court disagreed and, in doing so, discussed the nature of "friendships" on Facebook:

Websites such as Facebook do require a member to affirmatively approve or deny requests to enter into a "friendship."[] Therefore, in order for the jurors to become "friends" with [the victim's mother], either [the victim's mother] would have been required to approve friendship requests from the jurors, or the jurors would have been required to approve requests from [the victim's mother]. In either situation, the "friendship" that the jurors had with [the victim's mother] was not happenstance; there was an affirmative act to connect the parties.

But "friendships" on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during voir dire. The degree of relationship between Facebook "friends" varies greatly, from passing acquaintanceships and distant relatives to close friends and family. The mere status of being a "friend" on Facebook does not reflect this nuance and fails to reveal where in the spectrum of acquaintanceship the relationship actually falls. Facebook allows only one binary choice between two individuals where they either are "friends" or are not "friends," with no status in between.

Indeed, some people have thousands of Facebook "friends," as was the case with [the victim's mother], which suggests that many of those relationships are at most passing acquaintanceships. This is further complicated by the fact that a person can become "friends" with people to whom the person has no actual connection, such as celebrities and politicians. *See, e.g.,* Robbie Woliver, *Lady Gaga and her 10 million Facebook friends: celebrity worship syndrome,* Psychology Today (July 3, 2010), http://www.psychologytoday.com/blog/alphabet-kids/201007/lady–gaga–and–her–10–million–facebook–friends–celebrity–worship–syndrome (noting that the singer Lady Gaga has "10 million Facebook friends [who] aren't really her

friends").[]  Thus, a Facebook member may be "friends" with someone in a strictly artificial sense.

[23]  *Id.* at 222-23 (footnotes omitted).  Based on this reasoning, the *Sluss* Court held that "a juror who is a 'Facebook friend' with a family member of a victim, standing alone, is arguably not enough evidence to presume juror bias sufficient to require a new trial."  *Id.* at 223.  It explained that "[a]s with every other instance where a juror knows or is acquainted with someone closely tied to a case, it is the extent of the interaction and the scope of the relationship that is the relevant inquiry."  *Id.*  The Court, however, remanded the case to the trial court "for the limited purpose of conducting a hearing" to determine if the jurors' voir dire answers were false and whether they should have been struck for cause.  *Id.* at 229.

[24]  Shortly after *Sluss*, the Kentucky Supreme Court again addressed the issue of whether a juror's Facebook friend status with a victim's relative entitled the defendant to a new trial.  In *McGaha v. Commonwealth*, 414 S.W.3d 1 (Ky. 2013), *as modified* (Sept. 26, 2013), the defendant filed a post-trial motion, asserting that a juror's failure to disclose her Facebook friend status with the victim's wife constituted juror misconduct and entitled him to a new trial.  The juror had revealed during voir dire that she knew "some" of the victim's family and that her association with them was "casual."  *McGaha*, 414 S.W.3d at 5.  Neither party, however, asked the juror about any social media relationships she may have had with any potential witnesses.  *Id.*  The trial court denied the defendant's motion for a new trial.  *Id.*  On appeal, the *McGaha* Court affirmed

the trial court's ruling and explained that "[i]t [wa]s now common knowledge that merely being friends on Facebook does not, *per se,* establish a close relationship from which bias or partiality on the part of a juror may reasonably be presumed." *Id.* at 6 (citing *Sluss,* 381 S.W.3d at 222-23). The Court pointed out that, at the time of trial, the juror at issue had 629 Facebook "friends." *Id.* Relying on the *Sluss* Court's recognition that friendships on Facebook did "'not necessarily carry the same weight as true friendships[,]'" the *McGaha* Court stated that the juror "could not possibly have had a disqualifying relationship" with each of her 629 friends. *Id.* (quoting *Sluss,* 381 S.W.3d at 222). The *McGaha* Court held that "no presumption arises about the nature of the relationship between a juror and another person with an interest in the litigation simply from their status as Facebook friends." *Id.* It then mirrored the *Sluss* Court's directive that the "'relevant inquiry'" for the issue of whether a juror knew or was acquainted with "someone closely tied to a case" was to consider the "extent of the interaction and the scope of the relationship[.]" *Id.* (quoting *Sluss,* 381 S.W.3d at 223

[25] We now turn back to addressing the issue in this appeal: whether the Juror's failure to disclose during voir dire that the victim's sibling was among her expansive list of Facebook friends constitutes juror misconduct that warrants a new trial. Our task of deciding the issue is made slightly more difficult because the voir dire questioning was neither transcribed nor included in the record on appeal. Nevertheless, the Juror's deposition reveals that, during voir dire, when asked if she knew any of the witnesses, including K.W., she stated that she did

not. Because the voir dire process was not transcribed, we do not know for certain if the parties or the trial court questioned the jurors about their Facebook or other social media relationships with any of the potential witnesses. It appears that they did not. The trial court's preliminary instructions, however, have been included in the record.[10] These instructions reveal that the trial court instructed the jurors that if, at any time during the trial, they realized that they knew something about the case or knew a witness or the defendant, then they were required to "inform the bailiff privately at [the juror's] earliest opportunity." (Preliminary Instruction 1.27). In regard to the use of social media sites, such as Facebook, the trial court instructed the jurors that they were not to talk to anyone about the case, including "posting information, text messaging, email, Internet chat rooms, blogs, or social websites." (Preliminary Instruction 1.01).

[26] Here, Slaybaugh alleged that the Juror had engaged in juror misconduct because she did not reveal during voir dire or at trial that she knew the victim. Upon receiving Slaybaugh's motion containing this allegation, the trial court scheduled a hearing and ordered the parties to depose the Juror. The trial court reviewed all supporting documents attached to Slaybaugh's motion and the State's response and determined that the Juror "truthfully stated that she had no knowledge of the defendant, the victim or the family of either." (App. 20).

---

[10] These preliminary instructions were prudently included in the Exhibit Volume by the trial court.

Slaybaugh merely suggests that the evidence reviewed by the trial court—specifically, the Facebook pages submitted with his motion—support a decision opposite that of the trial court. Slaybaugh's argument that the trial court abused its discretion by finding that the Juror was truthful during voir dire is nothing more than an invitation to reweigh the evidence and the court's credibility determination, which we will not do. Slaybaugh has failed to meet his burden of showing juror misconduct. Indeed, he has failed to show that there was misconduct, let alone gross misconduct. *Dickenson v. State*, 732 N.E.2d 238, 241 (Ind. Ct. App. 2000) (explaining that it is "misconduct for a juror to make false statements in response to questions on *voir dire* examination"). Further, he would not be entitled to a new trial because he made no showing of likely or probable harm. *See, e.g.*, *Stephenson,* 864 N.E.2d at 1055 (holding that a juror's failure to disclose that he knew the victim's sister, who was a witness at trial and was the Sunday school teacher of the juror's children, did not entitle the defendant to a new trial because the defendant had failed to present "specific evidence" that the juror was biased or that the juror's "nondisclosure of this casual connection" had any effect on the juror's performance). Accordingly, we affirm the trial court's denial of Slaybaugh's motion for mistrial based on juror misconduct.

Affirmed.

Vaidik, C.J., and Robb, J., concur.