328 So.2d 389 (1976)
Berkley DESSELLE, Individually and on behalf of his minor son, Keith B. Desselle, Plaintiff-Appellant,
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC HIGHWAYS, Defendant-Appellee.
No. 5378.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1976.
*391 Edwards, Stefanski & Barousse by James M. Cunningham, III, Crowley, for plaintiff-appellant.
Domengeaux & Wright by Jack C. Fruge, Jr., Lafayette, for defendant-appellee.
Before HOOD, GUIDRY and PETERS, JJ.
HOOD, Judge.
This suit was instituted by Berkley Desselle, individually and on behalf of his minor son, Keith B. Desselle, seeking damages largely for personal injuries sustained by young Desselle when a motorcycle which he was operating struck a hole in a public highway. The defendant is State of Louisiana, Through the Department of Public Highways. The trial court rendered judgment in favor of defendant, rejecting plaintiff's demands. Plaintiff appealed.
The issues presented are whether defendant was negligent in having failed to repair the above defect in the highway before the accident occurred, and, if so, whether young Desselle also was negligent with the result that plaintiff is barred from recovering.
The accident occurred about 5:00 P.M., on April 21, 1973, on Louisiana Highway 700 in Lafayette Parish. Young Desselle and his friend, Randall Atkinson, were operating or driving their motorcycles north on that highway at that time. They were traveling side by side, with Desselle on the right of Atkinson, and there were no passengers on either motorcycle. The front wheel of Desselle's vehicle struck a hole or defect on the right or east side of the highway, causing Desselle to be thrown over the handlebars and to fall and slide on the surface of the highway. As a result of that accident, he sustained injuries which form the principal basis for this suit.
The highway at that point is a straight, level, two-lane, blacktopped thoroughfare. The weather was good, the sun was shining, the surface of the road was dry and visibility was good when the accident occurred. There were no other vehicles on the highway in that vicinity at that time.
Young Desselle was 15 years of age. He and his friend were traveling at a speed of about 50 miles per hour as they approached the place where the accident occurred. Although plaintiff's son had driven his motorcycle on other roads in that immediate vicinity, he had not traveled over this particular stretch of highway before the date of this accident.
Immediately before and at the time the accident occurred, Atkinson was riding in the northbound lane of traffic, about one foot from the center line of the highway, and young Desselle was riding about three or four feet on the right or east side of him, nearer the east edge of the blacktopped slab. Desselle did not see the hole in the road until the instant he struck it, and he did not apply his brakes or veer to either side in an effort to avoid striking it. He stated that when he saw the hole "it was there," or that he was "right on it," and that he didn't have time to apply his brakes or avoid striking it. He also explained that if he had veered to his left he would have collided with Atkinson, and that he therefore "just hit the hole." He was unable to describe the depression in the highway or to estimate its dimensions.
Desselle apparently took his eyes off the road momentarily just before he reached the point where the accident occurred, and we think that explains why he did not see the defect in the highway until the moment he struck it. He testified that:
"Right after we crossed the bridge Randall tried to tell me something so I turned as I was driving and I was driving *392 my bike when I saw the hole. When I saw it it was there and I couldn't do anything but just hit the hole and I just flipped over I couldn't do anything about it."
The witnesses differ as to the size, depth and location of the hole, and as to the distance at which it should have been visible to Desselle.
Plaintiff, Berkley Desselle, visited the site of the accident two or three days after it occurred, and he estimated the size of the hole as being two feet in diameter and 10 to 12 inches deep. He determined that the hole was located "right at where the wheels of the car passed," and that it was about 150 to 175 feet north of a bridge on the highway. He testified that he could see the hole from the bridge, that is, when he was 150 to 175 feet from it, but he explained that he knew that the hole was there, and that "if somebody that wasn't used to it, you'd have to be right on it."
Joseph M. Bertrand, Jr., a relative of plaintiff by marriage, traveled over that highway regularly twice a day. He could not estimate the size or depth of the hole, but he stated that the hole "didn't come out in the tire tracks," but only "to the tire tracks." He felt that the driver of an automobile could and should see the hole when he was about 60 feet from it.
Nelson Arceneaux, a foreman for the Highway Department, described the hole as being about two and one-half feet wide, four feet long and from two and one-half to three inches deep. He stated that he had never seen a hole in any road that was 10 to 12 inches deep. He placed the location of the hole as being on the east side of the road, "right to the edge of the blacktop," and from 300 to 400 feet north of a bridge on that highway. He testified that a motorist approaching the hole from the south could see it at least from 100 to 200 feet before he reached it.
Daniel Leger, who resides near the site of the accident and travels over the highway there twice a day, felt that the hole was three feet wide, four or five feet long, and two or three inches deep. He expressed no opinion as to the distance at which a motorist could see it.
Atkinson, the only eye witness to the accident other than plaintiff's son, did not testify at the trial.
The trial judge did not indicate in his reasons for judgment what he concluded as to the size, depth and location of the above hole in the highway, and neither did he make a specific finding as to the distance within which a motorist or motorcyclist approaching from the south should have seen it. He found that the defendant was negligent in allowing the hole to exist in the condition it was in at the time of the accident, but he also concluded that "plaintiff, Keith Desselle, was contributorily negligent in not avoiding the hole in question as apparently others who traveled the roadway in question were able to do." Since the trial judge found that young Desselle was negligent in not avoiding the hole, it is apparent that he felt that the latter should have seen the defect in the highway in time to enable him to stop or to veer around it and thus avoid an accident.
The evidence convinces us that the hole was about two and one-half feet wide, four feet long and from two to three inches deep. It was located along the east edge of the highway, extending about two and one-half feet into the blacktopped portion of it. We think young Desselle could and should have observed the defect in the highway at least when he reached a point about 60 feet from it.
The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the roadway. The duty of the Department of *393 Highways is only to see that the state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. LaBorde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3 Cir. 1975).
A motorist whose attention has not been called to an obstruction or peril in the highway ordinarily has the right to presume that the roadway is reasonably safe for ordinary traffic. His right to such a presumption, however, does not relieve him of his duty to maintain a proper lookout, to see all obstructions or perils on the highway ahead of him as soon as he reasonably should see them, and to avoid striking those obstructions when he can do so. Ortego v. State Farm Mutual Automobile Insurance Company, 295 So.2d 593 (La.App. 3 Cir. 1974).
The driver of a motor vehicle, including a motorcycle, is under a never ceasing duty to maintain a proper lookout and to see what he reasonably should have seen. His failure to see that which he should have seen constitutes negligence. He is required to maintain such control over the speed and operation of his vehicle as to permit him to stop within the range of his legal and proper lookout. There are exceptions to this rule, but those exceptions apply only in situations where the accident occurs suddenly and without warning, or where it results from a dangerous condition, in the nature of a trap, which could not be detected by a driver who is maintaining a proper lookout and proper control over his vehicle. DeGregory v. State, Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966); Dabov v. Allstate Insurance Company, 302 So.2d 697 (La.App. 3 Cir. 1974).
Applying the above principles of law to the facts in the instant suit, we conclude that young Desselle was negligent in having failed to maintain a proper lookout as he approached the place where the accident occurred. We think he could have avoided the accident if he had observed the defect in the highway as soon as he reasonably should have seen it.
Keith Desselle explained in one part of his testimony that he didn't veer to his left because he would have hit the Atkinson motorcycle. We cannot accept that explanation. One reason is that Desselle makes it clear in his testimony that he did not see the hole at all until the moment he struck it and that it then "was too late to do anything about it." The presence of the Atkinson motorcycle on his left thus had nothing to do with the occurrence of the accident. Secondly, if young Desselle had seen the defect in the highway as soon as he reasonably should have seen it, and he believed at that time that Atkinson was too close to enable him safely to veer to his left, then we believe that he could have increased or decreased his speed slightly before veering and that would have enabled him to avoid the hole without striking his companion. Young Desselle apparently concedes that he could have avoided the accident in that manner, despite the presence of Atkinson on his left, it he had been maintaining a proper lookout. He testified:
"Q. Do you see what I am getting at. If at first you had seen the hole, I want to know if you had enough room to veer left. You hit the road you were on the right side of the road, would you have had enough room to veer left without hitting Randall to avoid the bump?
"A. I presume I could have done it if I would have seen it, the hole, but I *394 wouldn't know unless I had seen the hole and tried it. I couldn't tell you.
"Q. Let's say you didn't have enough room? Could you have also slowed down your bike and veered left behind Randall and veered later behind him?
"A. Yes, I could of."
We agree with the trial court that young Desselle was negligent in having failed to exercise reasonable care in observing the highway ahead of him as he approached the place where this accident occurred. His negligence was a proximate cause of the accident, and it bars plaintiff from recovering.
Having concluded that plaintiff is barred from recovery because of his son's contributory negligence, it is unnecessary for us to consider the question of whether the defendant Department of Highways was negligent.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.