ELIZABETH ANN THORNTON, BY NEXT FRIEND,
JOHN C. THORNTON, JR. *v.* CHARLES R. PENDER.
MATHEW W. THORNTON BY NEXT FRIEND,
JOHN C. THORNTON, JR. *v.* CHARLES R. PENDER.

[No. 678S114. Filed June 20, 1978.]

*Cox, Zwerner, Gambrill & Sullivan,* of Terre Haute, for appellants.

*Jerdie D. Lewis, Lewis and Lewis,* of Terre Haute, for appellee.

PRENTICE, J.—This matter is before us upon Defendant's (Appellee's) petition to transfer the cause from the Court of Appeals, First District, which petition is now granted. Matt and Betsy Thornton (Plaintiffs-Appellants Below) brought separate actions for compensatory damages against Charles Pender (Defendant-Appellee), alleging that he negligently operated the automobile that collided with the bicycle upon which both Thornton children were riding. In his answer, Pender denied Plaintiffs' allegations of negligence and further claimed in defense that the plaintiffs' own negligence was a contributing cause of the accident.

Following a joint trial to the jury, a verdict was returned in favor of Defendant, Pender, and the Thorntons appealed.

The Court of Appeals determined that the trial court committed reversible error by refusing one of the Thorntons' tendered final instructions and ordered a new trial. The opinion of the Court of Appeals appears at 346 N.E.2d 631. We adopt Judge Lowdermilk's statement of the facts.

"Pender was proceeding westbound on Hull Cemetery Road, just outside of Terre Haute, late in the afternoon on

a sunny and clear day. The Thornton children had just fed the dogs at their grandfather's home on the north side of Hull Cemetery Road, and were about to ride Matt's bicycle back to their own home, which was about 350 feet east of the grandfather's home on the same side of the road. The open patch of ground between the two homes was separated from the road by a shallow ditch and a row of large multiflora rose bushes. These bushes blocked the view of both homes' driveways, so that only the last eight feet of the driveway was visible to approaching traffic.

"Matt was eleven years old at the time, and had recently received a new 21 inch 'stingray' bicycle with a large 'banana' seat. Although the children had been previously instructed not to ride double, seven year old Betsy decided to ride with Matt back to their home. Matt drove the bike down the driveway, and stopped at the edge of the pavement of Hull Cemetery Road. Matt looked to the east and saw a car approaching some 400 to 500 feet down the road. When he looked to the west, he saw that several large dogs were beginning to chase them as they had done on several previous occasions. Matt said something to his sister about the dogs, and then pulled out into the road in an attempt to escape them. They were struck by Pender just as they were passing the center of the blacktop road.

"Matt and Betsy were both thrown 50 feet down the road into the south ditch. The bicycle was thrown 100 feet down the road. Pender's car stopped crosswise in the road just past the bicycle. The children were still afraid of the dogs, and asked not to be left alone, so Pender put the children in his car and took them to their home, and eventually to the hospital.

"Immediately after the accident, Matt allegedly stated to Pender that he was sorry he pulled out in front of him. Pender allegedly told the children's older sister that he was hurrying home and was going too fast, and that his mother was going to be upset because he had been in another accident."

## ISSUE I

The Court of Appeals reversed the judgment of the trial court for its refusal to give the Thorntons' tendered final instruction number five:

"It is the duty of a driver of a motor vehicle on approaching a street or private driveway intersection to use reasonable care to discover whether or not there is any bicycle

approaching or entering such intersection. Even though the highway upon which the driver of the motor vehicle is traveling be a preferential one, it is still the duty to use due care to avoid coming into a collision with said bicycle."

Under Indiana law, as the Court of Appeals correctly observed, a driver has a duty to maintain a lookout while operating a vehicle. *Samuel-Hawkins Music Co.* v. *Ashby,* (1965) 246 Ind. 309, 205 N.E.2d 679; *Jackman* v. *Montgomery,* (1974) 162 Ind. App. 558, 320 N.E.2d 770; vehicles approaching from intersecting roads, *Samuel-Hawkins Music Co.* v. *Ashby, supra;* and children or bicycles along the road, *Taylor* v. *Fitzpatrick,* (1956) 235 Ind. 238, 132 N.E.2d 919. Whether a driver complied with the standard of ordinary care to keep a lookout under the facts of the case is a question for the jury. *Board of Commissioners of Delaware County* v. *Briggs,* (1975) 167 Ind. App. 96, 337 N.E.2d 852, reh. den. 340 N.E.2d 373; *Martin* v. *Lilly,* (1919) 188 Ind. 139, 121 N.E. 443.

A proper lookout has been defined to mean the duty to see that which is clearly visible or which in the exercise of due care would be visible. *McClenahan* v. *Des Moines Transit Co.,* (1965) 257 Iowa 293, 132 N.W.2d 471; *Ritter* v. *Andrews Concrete Products & Supply Co.,* (1958) 250 Iowa 297, 93 N.W. 2d 787, *Becker* v. *City of Waterloo,* (1954) 245 Iowa 666, 63 N.W.2d 919. See: *Kiner* v. *Northcutt,* (10th cir. 1970) 424 F. 2d 222; *Jimison* v. *United States,* (9th cir. 1967) 427 F. 2d 1133; *Baxter* v. *Missouri-Kansas-Texas Ry. Co.,* (8th cir. 1972) 454 F. 2d 25; *Pistolesi* v. *Staton,* (4th cir. 1973) 481 F. 2d 1218; *Desselle* v. *State,* (1976) La. App., 328 So. 2d 389; *Munson* v. *State Dept. of Highways,* (1975) 96 Idaho 529, 531 P. 2d 1174; *Kray* v. *Ricci,* (1973) 14 Ill. App. 3d 904, 303 N.E.2d 458; *Smithson* v. *Dunham,* (1968) 201 Kan. 455, 441 P. 2d 823.

The Thorntons' tendered instruction number five, however, does not refer to a driver's duty to maintain a lookout. It

states that a driver has a duty to use care to *discover* bicycles about to enter a preferential highway from a private drive. The clear implication of the Thorntons' proposed duty to discover vehicles entering or about to enter a preferential highway goes well beyond the established duty to see that which is clearly visible. To "discover" implies a seeking out of that which is *not* clearly visible.

Matt Thornton testified that he stopped his bicycle at the end of the driveway prior to proceeding onto the road. The evidence established that large bushes obstructed the view of the driveway from the road except for the last several feet. Pender testified that he did not see the plaintiffs stopped at the edge of the road, but saw them only after they were already on the road, just prior to the collision. Whether the children actually stopped at the end of the driveway where they would have been within the defendant's view if he had been maintaining a proper lookout, or whether they rode from behind the bushes and onto the road without first stopping, was a question of fact to be determined by the jury. In their pleadings and throughout the course of the trial, the plaintiffs refer to the defendant's duty to maintain a proper lookout, and in their brief on appeal, they also argue in favor of their tendered instruction number five in terms of a driver's duty to maintain a proper lookout. Their tendered instruction number five, however, refers to a driver's *duty to discover* vehicles entering a preferential highway.

If the plaintiffs failed to stop at the end of the driveway where they could have been seen by the defendant, the defendant could not have been negligent by failing to see them. Plaintiffs' tendered instruction five, phrased in terms of a *duty to discover,* might have misled the jury to a contrary conclusion, and was properly refused.

## OTHER ISSUES

It is also necessary to consider the other issues raised in the Thornton's appeal, which were not dealt with by the Court

of Appeals due to its disposition of the case. These issues are as follows:

(2) Whether the trial court erred by admitting certain photographs, denominated as Defendant's exhibits A, B, and C.

(3) Whether the trial court committed error by excluding from evidence certain photographs and testimony, offered by Plaintiffs to show skid marks on the road at the scene of the accident.

(4) Whether the court erred by refusing to allow the Plaintiffs' father to express an opinion, as an expert witness, concerning tire skid marks.

(5) Whether the court erred by refusing to admit certain photographs offered by Plaintiffs for the limited purpose of showing the north shoulder of Hull Cemetery Road.

(6) Whether it was reversible error to give final instructions numbered nine and ten.

(7) Whether it was error to refuse Plaintiffs' tendered final instruction number six.

## ISSUE II

The defense offered three photographs, Exhibits "A", "B" and "C", into evidence, all of which were admitted over Plaintiffs' objections. Exhibits A and B were photographs of Hull Cemetery Road at the scene of the accident, viewed from the east. Exhibit "C" was another photograph of Hull Cemetery Road at the scene of the accident, but viewed from the west.

Charles Pender identified these three photographs and stated that they were accurate representations of the scene as it appeared on the day of the accident. Pender did not know when the photographs were taken. He could not identify certain marks on the road surface, nor did he explain that the foliage shown by the pictures was more abundant than it was at the time of the accident.

Plaintiffs objected to the admission of these photographs

upon the ground that Pender had failed to identify them adequately and further objected to exhibit "B" upon the ground that it was of exceedingly poor quality, thereby giving the mistaken impression that the weather was dark and overcast at the time of the accident.

The admission or exclusion of photographic evidence rests largely within the discretion of the trial court, and the determination made by that court will not be disturbed upon appeal unless it is clearly erroneous. *Richmond Gas Corp.* v. *Reeves*, (1973) 158 Ind. App. 338, 302 N.E.2d 795; *Central Indiana Ry. Co.* v. *Anderson Banking Co.*, (1968) 143 Ind. App. 396, 240 N.E.2d 840.

Although the accuracy and usefulness of photographic evidence are preliminary questions of fact, *Haven* v. *Snyder*, (1931) 93 Ind. App. 54, 176 N.E. 149, the Court on appeal is not necessarily constrained to look only to the identification evidence which precedes the admission of the photograph. Even assuming that Pender's identification was not sufficient as a prima facie showing of relevance and accuracy, evidence subsequent to the admission of the photographs clearly supports the trial court's ruling.

After the admission of these photographs, Plaintiffs called to the stand the photographer who took exhibits "A" and "C". He testified that he was familiar with Hull Cemetery Road and the location of the Thorntons' property, and he identified exhibits "A" and "C" as being photographs of the accident scene. He testified that these two photographs were taken during the late summertime. Although this witness did not personally take the photograph which was exhibit "B", he testified that it was an enlargement of another photograph, which accounted for its lack of clarity. Furthermore, Plaintiff Matt Thornton utilized the exhibits in conjunction with his testimony, located reference points in each exhibit, and testified about the accident in relation to the scenes appearing in each exhibit.

## ISSUES III & IV

Plaintiffs sought to introduce testimony and photographs concerning the existence of multiple skid marks on the road at the scene of the accident. They also attempted to have John Thornton, the children's father, qualify as an expert witness concerning tire marks and accident reconstruction. If the evidence of the tire marks was properly excluded, however, John Thornton's qualification as an expert witness would be purely academic.

John Thornton testified that after returning home from the hospital, some eight hours following the accident, he observed several tire marks on the pavement at the scene of the accident. He also testified that these tire marks were not present prior to the accident.

The existence of skid marks is clearly relevant to the issue of negligence. *Taylor* v. *Fitzpatrick*, (1956) 235 Ind. 238, 132 N.E.2d 919; *Haven* v. *Snyder*, (1931) 93 Ind. App. 54, 176 N.E. 149. Evidence that particular tire marks were present following an accident, but not before, is sufficient to establish a reasonable inference that the marks were made at the time of the accident. However, evidence was also submitted to show that drag races were common occurrences along this stretch of road, and the tire marks shown in the photographs were multiple, with each tire mark going in a different direction. The trial court observed:

"COURT: Now without a proper identification these are highly prejudicial in this type of case; now, I can look up here at the next lane and see more skid marks.

"MR. ZWERNER: I know you can.

"COURT: And as Mr. Lewis points out, I can see at least two vehicles worth of skid marks here.

"MR ZWERNER: And we can explain those skid marks and we can explain a lot more . . ."

The trial court refused the evidence of tire marks due to the likelihood of confusion and prejudice to the defendant. *See*

*Richmond Gas Corp.* v. *Reeves, supra.* The photographs do not show skid marks that are clearly attributable to a single automobile.

The Thorntons argue on appeal, for the first time, that such a configuration of skid marks as is shown in the photographs could have been made by an automobile which was spinning as it skidded. The evidence did show that Pender's car came to rest at a ninety degree angle to the road, and the Thorntons' explanation might have obviated the confusion which was inherent in the evidence. However, the Thorntons did not attempt to explain this to the trial court, and in the absence of such an offer, it cannot be said that the trial court was clearly wrong in excluding the evidence for the reason that its limited relevance was outweighed by the potential for confusion. See, Ind. R. Tr. P. 43 (C); *Flynn* v. *Reberger*, (1971) 149 Ind. App. 65, 270 N.E.2d 331; *Lipner* v. *Lipner*, (1971) 256 Ind. 151, 267 N.E.2d 393.

Since the evidence of tire marks was properly excluded, the court's refusal to permit John Thornton to testify as an expert witness could not have been prejudicial. Even if Thornton were qualified to give an expert opinion concerning the tire marks, there would have been no evidence upon which to base an opinion.

## ISSUE V

Plaintiff's exhibits 14 and 17 were photographs of Hull Cemetery Road at the scene of the accident, showing multiple skid marks on the road surface. Following the exclusion of these photographs as above related, Plaintiffs sought to have them admitted for the limited purpose of showing the height of the bushes and the north shoulder along Hull Cemetery Road. Exhibit 17 was admitted for this limited purpose, but exhibit 14 was excluded as repetitious.

Both exhibits 17 and 14 were photographs of Hull Cemetery Road as viewed from the west, the direction in which

Defendant was traveling. Exhibit 17 was taken at the point of collision, and exhibit 14 was taken some twenty feet further west. Exhibit 17 showed the bushes and the north shoulder of Hull Cemetery Road to the east of the driveway from which the plaintiffs entered the road. Exhibit 14 showed the same scene as was contained in exhibit 17, but showed in addition the bushes and north shoulder to the west of the driveway. It is obvious, however, that the additional information contained in the excluded exhibit 14, which was not shown in the admitted exhibit 17, was irrelevant to the issues of the case.

The height of the bushes to the west of the driveway from which Plaintiffs entered Hull Cemetery Road was not relevant since the defendant was coming from the east, and the bushes to the west of the driveway could not have blocked his view of the Plaintiffs. The north shoulder of the road to the west of the driveway was also irrelevant. Plaintiffs alleged that the defendant was negligent by not driving his car onto the north shoulder of the road in order to avoid a collision with the bicycle. The shoulder to the west of the driveway was beyond the point of impact, however, and it could not be relevant that the defendant could safely drive onto a portion of the shoulder which was beyond the point of collision.

Although the trial court excluded exhibit 14 on the ground that it was repetitious, it was properly excluded as being irrelevant. A court on appeal will affirm the trial court's decision if it is sustainable upon any theory. *Montgomery Ward & Co.* v. *Tackett,* (1975) 163 Ind. App. 211, 323 N.E.2d 242. Cf. *City of Elkhart* v. *Middleton,* (1976) 265 Ind. 514, 356 N.E.2d 207, for the standard of review upon interlocutory appeal.

## ISSUE VI

Over Plaintiffs' objections, the trial court gave the following final instruction number nine:

"You are instructed on the date and at the time of the

collision in question there were statutes in the State of Indiana which provided in pertinent part as follows:

"Section IC 9-4-1-94 (47-2102), TRAFFIC LAWS APPLY TO PERSONS RIDING BICYCLES:

"Every person riding a bicycle upon a roadway shall be subject to the provisions of this act (9-4-1-138) applicable to the driver of a vehicle * * *"

"Section IC 9-4-1-84 (44-2029) ENTERING HIGHWAY FROM PRIVATE ROAD OR DRIVEWAY:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway.

"Section IC 9-4-1-21 (47-1821) RIGHT-OF-WAY THE PRIVILEGE OF THE IMMEDIATE USE OF THE HIGHWAY.

"If you find by a preponderance of the evidence in this case, that the plaintiffs, Matthew W. Thornton or Elizabeth Ann Thornton, failed to comply with provisions of this statute in the exercise of such care for his or her own safety, as would be exercised by children of like age, capacity and experience under the facts, circumstances and conditions on the occasion in question, without excuse or justification, such conduct would constitute negligence on the part of plaintiffs, Matthew W. Thornton or Elizabeth Ann Thornton."

Plaintiffs first contend that the yield-right-of-way statute is not applicable to bicycles under the facts of this case. They argue that Indiana's highway safety statutes are made applicable to bicycles only when the bicycles are being ridden upon a "roadway," Ind. Code § 9-4-1-94 (Burns 1973), and that a private driveway is not a "roadway" as that term is defined by Ind. Code § 9-4-1-14 (Burns 1973). *See Sheptak* v. *Davis*, (1965) 246 Ind. 499, 205 N.E.2d 548. They would have this Court conclude that if they were not technically in violation of the "yield" statute, the reading of the statute to the jury was reversible error.

Plaintiff's argument misconstrues the proper employment of safety legislation in negligence litigation, however, in Indiana proof of the violation of a safety regulation creates a rebuttable presumption of negligence.

*Davison* v. *Williams*, (1968) 251 Ind. 448, 242 N.E. 2d 101. The presumption of negligence resulting from the violation of a safety regulation may be rebutted since it is not always reasonable to obey the letter of the law. *Davison* v. *Williams, supra; Larkins* v. *Kohlmeyer*, (1951) 229 Ind. 391, 98 N.E.2d 896. As Justice Hunter stated in *Davison, supra,* "The ultimate issue, as far as . . . liability is concerned is not whether or not the regulation was violated, but whether or not there was negligence." The use of safety regulations as evidence of the standard of care owed by highway users is not necessarily dependent upon a technical violation of those regulations. Safety statutes have been applied in civil litigation when no criminal conviction would have been possible, as in *Geisking* v. *Sheimo,* (1960) 252 Iowa 37, 105 N.W.2d 599, (safety regulation was not validly enacted) ; *Black* v. *Stith,* (1940) 164 Ore. 117, 100 P. 2d 485, (no technical violation of statute requiring observance of traffic signs since "yield" sign was not an authorized traffic sign) ; and *Pelzer* v. *Lange,* (1958) 254 Minn. 46, 93 N.W.2d 666, (seven year old was not subject to prosecution for violation of safety statute). (Reference from Prosser, *HANDBOOK OF THE LAW OF TORTS,* 4th Ed. § 36).

Plaintiffs concede that they had a common law duty to yield the right-of-way to traffic on a preferential highway. Whether there was a failure to yield the right-of-way is necessarily a question of fact dependent upon the circumstances of the case, regardless of whether the standard was phrased in terms of the statutory mandate, or whether the jury was instructed concerning the common law duty. Expressing the standard in terms of the statutes was also a correct expression of the common law standard and could not have prejudiced the plaintiffs.

The terms of instruction number nine applied to both plaintiffs Thornton, and they objected upon the ground that Betsy was merely a passenger on the bicycle, and could not have been negligent herself, even if Matt

had negligently failed to yield the right-of-way. Under Indiana law, however, the negligence of the driver of a vehicle may be imputed to a passenger if the passenger exercises joint control over the vehicle, *Leuck* v. *Goetz,* (1972) 151 Ind. App. 528, 280 N.E.2d 847; *Baltimore & Ohio Ry. Co.* v. *Patrick,* (1960) 131 Ind. App. 105, 166 N.E.2d 654, or if the passenger knowingly and voluntarily incurred the risk of harm upon entering the vehicle, *Pittsburgh, C., C. & St. Louis Ry. Co.* v. *Kephert,* (1916) 61 Ind. App. 621, 112 N.E. 251. Here, there was a statutory presumption that by riding double, Betsy interfered with the safe operation of the bicycle. *See,* discussion of instruction number ten, *infra.* Furthermore, there was uncontroverted evidence that both children were aware of the dangers associated with riding double upon a bicycle. Whether Matt's negligence as operator of the bicycle could be imputed to Betsy, as passenger, was a question of fact.

Although instruction number nine did not explain the legal implications of imputing Matt's negligence to Betsy, "[a] party cannot complain of an instruction given by the court which, although incomplete, is a correct statement of the law as far as it goes, where such party did not tender a more full instruction on the subject." Wiltrout, *Indiana Practice,* § 1400 (5); *Mireles* v. *State,* (1973) 261 Ind. 64, 300 N.E.2d 350; *City of Terre Haute* v. *Deckard,* (1962) 243 Ind. 289, 183 N.E.2d 815.

Plaintiffs also objected to instruction number ten, which was as follows:

"You are instructed that at the time and place of the collision in question, there was in full force and effect a statute of the State of Indiana which provided:

"(a) A person shall not ride other than upon the permanent and regular seat attached thereto, nor carry any other person upon such bicycle otherwise than upon a firmly attached and regular seat thereon, nor shall any person ride upon a bicycle otherwise than as above stated.

"(b) No bicycle shall be used to carry more persons at one (1) time than the number for which it is designed and equipped."

"If you find by a preponderance of all the evidence in this case, that the plaintiffs, Matthew W. Thornton or Elizabeth Ann Thorn, failed to comply with provisions of this statute in the exercise of such care for his or her own safety, as would be exercised by children of like age, capacity and experience under the facts, circumstances and conditions on the occasion in question, without excuse or justification, such conduct would constitute negligence on the part of plaintiffs, Matthew W. Thornton or Elizabeth Ann Thornton."

Plaintiffs objected to the inclusion of subsection (a) of Ind. Code § 9-4-1-95 in the instruction since the evidence clearly showed that Betsy was riding behind her brother, upon the rear portion of an eighteen inch, securely attached seat. Their objection would be well taken, but for subsection (b) of the statute.

Plaintiffs objected to subsection (b) on the ground that the defendant failed to prove that the bicycle in question was not designed for two people. They contend that the eighteen inch seat was designed to carry passengers. It is clear, however, that the Legislature intended to prohibit the act of transporting passengers on bicycles. The exception which is implicit in subsection (b) was intended to cover tandem vehicles which common language denominates as "bicycles built for two." With this intention expressed, it is obvious that a bicycle of ordinary design does not qualify under the exception merely because it has been equipped with a seat that will accommodate two persons.

The danger which this safety regulation was apparently intended to avert is exposure to instability inherent in the added weight, imbalance and interference of a passenger. We are of the opinion that Plaintiffs were in violation of subsection (b), elongated seat or not.

Plaintiffs also argue that instruction number ten was erroneous since there was no evidence that riding double was

the proximate cause of the accident. This alleged error must be considered as having been waived since Plaintiffs failed to object to the instruction upon that ground at the trial. *Tyler* v. *State,* (1968) 250 Ind. 419, 236 N.E.2d 815; *Whitten & Bailey* v. *State,* (1975) 263 Ind. 407, 333 N.E.2d 86; *Jones* v. *State,* (1973) 260 Ind. 463, 296 N.E.2d 407.

Plaintiffs pose further objections to instruction numbers nine and ten, which are similar. First, they argue that Betsy Thornton was incapable of negligence due to her tender years. However, Plaintiffs tendered their final instruction number two, which was given as court's final instruction number twelve, which advised the jury that they could find Betsy Thornton contributorily negligent if she failed to exercise such care as would be expected from a child of like age and experience. A party cannot complain of an error in an instruction if he has tendered to the court an instruction containing the same alleged error. *McCague* v. *New York C. & St. L. Ry. Co.,* (1947) 225 Ind. 83, 71 N.E.2d 569; *Keeshin Motor Exp. Co.* v. *Glassman,* (1942) 219 Ind. 538, 38 N.E.2d 847; *Hamling* v. *Hildebrant,* (1949) 119 Ind. App. 22, 81 N.E.2d 603.

Finally, Plaintiffs objected to both instructions upon the ground that they failed to state accurately the standard of care owed by children. In *Bixenman* v. *Hall,* (1968) 251 Ind. 527, 242 N.E.2d 837, this Court stated:

"It clearly appears that the most well-reasoned rule to adopt, and indeed the general rule adopted by the majority of the United States is that where a minor is charged with negligence or contributory negligence by reason of his violation of a safety statute while engaged in an activity not requiring adult qualifications the standard of care to be applied to such minor is *that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and educational level. * * *"* (Emphasis added)

Both instructions number nine and ten stated the standard of care as: "* * * such care for his or her own safety, as would be exercised by children of like age, capacity and experience under the facts. * * *." It is difficult to see how the language contained in the instructions in question is substantially different than the language in *Bixenman, supra.*

## ISSUE VII

Plaintiffs tendered their final instruction number six, which was refused, and which was as follows:

"You are instructed that a motorist has a duty to keep his motor vehicle under reasonable control while operating said motor vehicle upon a public highway."

The only evidence that Pender failed to keep his automobile under control was some evidence to the effect that he was driving too fast. The court's instruction number eleven informed the jury of Ind. Code § 9-4-1-57, which required all drivers to drive at a reasonable speed. It is not error to refuse an instruction if its subject matter is substantially covered by other instructions actually given. *Greenwalt* v. *State*, (1965) 246 Ind. 608, 209 N.E.2d 254; *Boyd* v. *State*, (1965) 246 Ind. 255, 204 N.E.2d 651.

We find no reversible error. The decision of the Court of Appeals herein is now ordered vacated, and the judgment of the trial court is affirmed.

Givan, C.J., and Hunter and Pivarnik, JJ., concur; De-Bruler, J., dissents.

NOTE.—Reported at 377 N.E.2d 613.