Kris V. ROHRKASTE,
Plaintiff-Appellant,

v.

CITY OF TERRE HAUTE,
Defendant-Appellee.

No. 4–1183A369.

Court of Appeals of Indiana,
Third District.

Nov. 14, 1984.

Malcolm H. Aukerman, Newport, Stephen L. Williams, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for plaintiff-appellant.

Raymond H. Modesitt, John Christopher Wall, Patrick, Wilkinson, Goeller & Modesitt, Terre Haute, for defendant-appellee.

GARRARD, Judge.

Kris V. Rohrkaste brought suit against the City of Terre Haute to recover damages he allegedly suffered as the result of a collision between the automobile Rohrkaste was driving and an ambulance owned by the City. The collision occurred as Rohrkaste proceeded east on Fort Harrison Road in Terre Haute through a green light at the intersection of Fort Harrison Road and 13th Street. In the intersection the ambulance, heading south on 13th Street through a red light, struck Rohrkaste's automobile. The evidence most favorable to the verdict showed that the ambulance's siren and lights were on when the accident occurred. Rohrkaste alleged that the negligence of the ambulance driver was the proximate cause of the accident and his resulting personal injury and property damage.

This cause was tried by a jury beginning May 16, 1983. On May 18, 1983, the jury returned a verdict in favor of the City and the court entered judgment on that verdict. Rohrkaste now appeals, raising the following issues for our review:

1. Whether the court erred by granting the City's motion *in limine* which sought to prohibit Rohrkaste from inquiring into prospective jurors' interest in any insurance company.

2. Whether the court erred by giving certain instructions and refusing others, as follows:

A. Refusing a "missing witness" instruction tendered by Rohrkaste;

B. Refusing an instruction tendered by Rohrkaste stating that a driver does not have an absolute duty to hear the siren or see the flashing lights of an ambulance;

C. Refusing an instruction tendered by Rohrkaste stating that an ambulance driver has no absolute right to proceed through a red light;

D. Refusing to explain to the jury the relevant statutes relating to emergency vehicles;

E. Modifying an instruction tendered by Rohrkaste as to the City's burden to prove the ambulance was responding to an emergency when the accident occurred;

F. Refusing an instruction tendered by Rohrkaste covering contributory negligence and proximate cause;

G. Giving an instruction tendered by the City defining the ambulance as an "authorized emergency vehicle" under the law of Indiana.

## I. Motion in limine

Before trial, the court granted the City's motion *in limine* which sought to prohibit Rohrkaste from questioning jurors during *voir dire* as to their interest in an insurance company. Rohrkaste contends the court committed reversible error by granting the motion over Rohrkaste's written objection. He suggests such questioning, had it been allowed, "would have disclosed the bias, interest or prejudice of jurors created by any interest in or relationship to

any insurance company, and, in particular, the company which insured the City." Brief at 44.

■ We agree with Rohrkaste that he was entitled to a jury composed of impartial and unbiased persons. *Brinkman v. Hovermale* (1938), 106 Ind.App. 70, 13 N.E.2d 885. To seek that end, Rohrkaste had the right to make a reasonable inquiry into any financial interest a juror might have had in the outcome of the trial which might have skewed the juror's otherwise impartial approach to the evidence. *M. O'Conner & Co. v. Gillaspy* (1908), 170 Ind. 428, 83 N.E. 738; *Goff v. Kokomo Brass Works* (1909), 43 Ind.App. 642, 88 N.E. 312; *Rust v. Watson* (1966), 141 Ind. App. 59, 215 N.E.2d 42.

■ However, Rohrkaste's burden of establishing reversible error goes beyond eliciting our agreement with broad statements of the law. A mere showing that the court improperly limited the scope of the *voir dire* examination does not establish entitlement to reversal without a further showing that Rohrkaste entered a proper objection or made an offer to prove. *Cf. Rieth-Riley Construction Company, Inc. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844 (opposing party's conduct of *voir dire* examination was cause for reversal but complaining party failed to make proper, contemporaneous objection). Rohrkaste asks us to view his written response to the City's motion *in limine* as sufficient objection to preserve his contention of error. Case law clearly requires that we hold otherwise.

■ While the trial court's authority to grant motions *in limine* emanates from its inherent power to exclude evidence, *Burrus v. Silhavy* (1973), 155 Ind.App. 558, 293 N.E.2d 794, 799, its usefulness need not be restricted to evidentiary matters. *See Moore v. State* (1982), Ind., 440 N.E.2d 1092, 1093 and *Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378, 1381 (in both cases, the trial court granted a motion *in limine* prohibiting reference to certain matters during *voir dire*). A court may grant such a motion any time there is a need to protect the jury from possibly objectionable questions and statements the prejudicial effect of which might not be curable by the court's admonishment of the jury. *Burrus v. Silhavy, supra* 293 N.E.2d at 796–797.

■ The grant of a motion *in limine* is nothing more than a preliminary order requiring counsel to alert the court during trial to any proposed reference to a matter covered by the granted motion so that the court can make its final ruling on the propriety of the line of questioning. In *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475, the Supreme Court explained that the purpose of the motion *in limine* is:

"... to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. *Baldwin v. Inter City Contractors Service, Inc.* (1973), 156 Ind.App. 497, 297 N.E.2d 831."

376 N.E.2d at 481.

■ As a preliminary ruling, the grant of a motion *in limine* is not itself reviewable on appeal. Likewise, error cannot be predicated on an objection to the grant of the motion. To preserve error, a party, out of the hearing of the jury, must propose to ask a certain question at trial and have the court prohibit it. Failure to offer the excluded material constitutes waiver of the issue. *Webb v. State* (1983), Ind., 453 N.E.2d 180; *Smith v. State* (1981), Ind., 426 N.E.2d 364; *McCraney v. State* (1981), Ind., 425 N.E.2d 151, and cases cited therein.

■ The rationale for requiring an offer of proof to preserve error is particularly evident here. We do not presume that a trial court erred. *English Coal Company, Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302. The appellant has the burden of showing an erroneous *and prejudicial*

ruling of the trial court. *TeWalt v. TeWalt* (1981), Ind.App., 421 N.E.2d 415. Without a showing of actual harm, we have no basis for reversing a trial court's judgment. *Id.*

■ Here Rohrkaste asks us to reverse because the trial court prohibited him from asking prospective jurors about their interest in an insurance company. We agree with Rohrkaste to the extent he argues the trial court unequivocally had stated it would not allow such questioning during *voir dire*. The court sustained the City's motion *in limine* directly before the *voir dire* examination began. We doubt the trial judge would have changed his mind and allowed Rohrkaste to pursue a line of questioning he had prohibited minutes earlier.

Yet, no matter how fruitless an attempt to ask the previously prohibited questions might have seemed, without such an attempt we are left with no means to measure the harm potentially suffered by Rohrkaste. While by memorandum Rohrkaste opposed the City's motion, it was never apparent he had any particular desire or need to ask the questions the City sought to exclude by its motion. If during the questioning of the venire plaintiff's counsel felt the need to inquire into the area prohibited by the order *in limine*, he should have moved for permission and, if denied, should have made an offer. For example, counsel could have inquired whether there had been any changes in the answers given to the questionnaires, and pursued the results of that inquiry, moving for relief if necessary.

On appeal, Rohrkaste concentrates on his *right* to inquire into the potential bias of the prospective jurors, citing, *inter alia, M. O'Conner & Co. v. Gillaspy* (1907), 170 Ind. 428, 83 N.E. 738. In *Gillaspy*, the Supreme Court held that the trial court did not err by allowing the plaintiff:

"... to ask each juror upon his voir dire whether he or any member of his family was in any way interested as stock holder, officer or agent of the Aetna Insurance Company, or of any insur-

ance company engaged in the business of insuring against accidents."

83 N.E. at 740. In *Goff v. Kokomo Brass Works* (1909), 43 Ind.App. 642, 88 N.E. 312, also cited by Rohrkaste, the judgment of the trial court was reversed for not permitting the plaintiff to make such an inquiry.

The trial court substantially complied with the spirit of *Gillaspy* and *Goff* here. One of the questions on the jury questionnaire asked each prospective juror:

"Are you or any member of your immediate family employed by or have any interest in or own any stock of any insurance company?"

All but one of the people selected to serve on the jury answered "no" to the question. Although, as Rohrkaste points out, "[T]he questionnaire itself is not given under oath or under the pains of perjury," all the jurors affirmed that their answers were true.

■ In any event, the fact that Rohrkaste had access to these answers leaves us to wonder whether he was not satisfied by them or whether he simply wished to imply to the jury that the city was insured. An offer to prove may not have affected the trial judge's resolve on the issue of the permissible scope of the *voir dire* examination. However, it would have provided this court with proof Rohrkaste was prevented from asking a question he in fact wished to ask. Rohrkaste admittedly made no offer to ask any question covered by the City's motion. We refuse to presume he had a relevant question which the court's ruling prohibited him from asking of the prospective jurors. Rohrkaste has not shown the court erred in the conduct of the *voir dire* examination.

## II. *Jury instructions*

The remaining errors alleged by Rohrkaste concern the final instructions given to the jury.

### A. "Missing witness" instruction

■ Rohrkaste contends the City failed to prove its ambulance was on an emergency run when it collided with Rohrkaste's

automobile. Ray Bazier, the emergency medical technical (EMT) who was driving the ambulance, testified that he was responding to an emergency dispatch at the time of the accident. However, Rohrkaste insists the City could have and should have substantiated Bazier's testimony by producing either the radio dispatcher, the central dispatcher, the person who made the emergency call, or Kevin Tyler, the other EMT in the ambulance. Because of the absence of these witnesses, Rohrkaste contends he was entitled to have the court give the "missing witness" instruction he tendered as a final instruction. That instruction stated:

"The unexplained failure of a party to produce a witness within its control may give rise to an inference that had the witness testified the testimony would have been unfavorable to that party's cause."

In *Chrysler Corporation v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908 where we found the court did not commit prejudicial error by giving a "missing witness" instruction, we stated that while the instruction may be appropriate under certain circumstances where carefully worded,

"... *such instructions have been held properly refused when not clearly required by the evidence, as where the witness is available to both sides.*"

Thus, while such instructions may be appropriate where the facts in evidence uniquely require application of the principle involved, we do not approve their casual acceptance. In most cases, the record made will simply be silent as to why a particular witness was not called. There may be many legitimate reasons for the failure including the merely cumulative nature of the testimony to be secured, the failure of the witness to have perceived what he might have observed, or the existence of independent grounds for an opponent to question his general credibility. Under such circumstances, counsel may determine as a matter of trial strategy to bypass the witness, but not because he will testify ad-

versely. Nor do we believe that the trial should be burdened with the production of all such witnesses simply to protect against an instruction or adverse inference." (emphasis added, citations omitted)

342 N.E.2d at 917, 918.

Here we cannot ignore Rohrkaste's total failure to show how any of these potential witnesses were under the City's control or why he could not subpoena any one or more of them to give the testimony he alleges would have exposed the damaging gap in the City's defense. Tyler, who was one of these allegedly missing witnesses, was in the courthouse for two of the three days the trial lasted. Yet Rohrkaste seeks to have the City held responsible for Tyler's failure to testify although Rohrkaste shows no impediment to his right to call Tyler as a witness. The trial court correctly refused to allow Rohrkaste to substitute an inference of testimony unfavorable to the City for his own failure to produce such testimony. *See Loehr v. National Security Life Insurance Company* (1969), 144 Ind.App. 503, 247 N.E.2d 232 (no error in refusing to give a "missing witness" instruction where there was no showing the witness was not more available to one party than to the other).

**B. Contributory negligence and duty of care**

Rohrkaste next argues that the court erred by refusing to give his tendered instructions to the effect that it is not contributory negligence as a matter of law simply because a driver does not hear a siren and does not see a flashing red light, and that the driver of an emergency vehicle does not have an absolute right to proceed through a red light.

It is not reversible error for the court to reject instructions that are adequately covered by other instructions given to the jury. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613.

Here the court adequately instructed the jury on Rohrkaste's general duty of reasonable care and his specific responsibil-

ities as a driver of a vehicle. The court also instructed the jury concerning the duties imposed by IC 9–4–1–85 and IC 9–4–1–25 and that violation of a safety statute creates a rebuttable presumption of negligence on the part of the violator.[1] These instructions adequately advised the jury. There was no reversible error in refusing Rohrkaste's tendered instructions numbered 6 and 7.

C. Statutory law

The Court's Final Instruction No. 15 was a modified version of Rohrkaste's tendered Instruction No. 4. This instruction, as given, quoted three traffic safety statutes applicable to the respective duties of care owed by Rohrkaste and the ambulance driver. Rohrkaste objected at trial to the modification of his tendered instruction by the deletion of an explanatory paragraph which concluded the instruction. That paragraph provided:

"If you find from a preponderance of the evidence that the City of Terre Haute through its agents and employees violated this statute on the occasion in question, and that the violation was without excuse or justification, then you may consider such conduct in determining the liability of the City of Terre Haute to Kris Rohrkaste."

The trial court does not commit error when it refuses to give a misleading or confusing instruction. *Cartwright v. Harris* (1980), Ind.App., 400 N.E.2d 1192. Furthermore, the court may modify an instruction so that it correctly states the law. *City of Logansport v. Dykeman* (1888), 116 Ind. 15, 17 N.E. 587. "[A]n instruction may be misleading if it is one-sided." *Cartwright, supra,* 400 N.E.2d at 1194. The concluding paragraph of the instruction tendered by Rohrkaste was one-sided; it implied that the duties outlined in the statutory language applied only to the City and its employees. The court properly deleted that paragraph and instructed the jury on the application of the statutes to

1. "9–4–1–85 [47–2030]. *Operation of vehicles and street cars on approach of authorized emergency vehicles.*—(a) Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, or displaying a flashing red light, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a law enforcement officer.

(b) [Deleted.]

(c) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway. [Acts 1939, ch. 48, Section 81, p. 289; 1981, P.L. 121, Section 2.]

9–4–1–25 [47–1825]. *Public officers and employees to obey chapter—Exceptions.*—(a) The provisions of this chapter applicable to the drivers of vehicles on a highway shall apply to the drivers of all vehicles owned or operated by the United States, this state or any, county, city, town, district, or any other political subdivision of the state, subject to such specific exceptions as are set forth in this chapter with reference to authorized emergency vehicles.

\* \* \* \* \* \*

(c) The driver of any authorized emergency vehicle when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding, but not upon returning from a fire alarm, may exercise the privileges set forth in this chapter, but subject to the conditions herein stated.

(d) The driver of an authorized emergency vehicle may:

\* \* \* \* \* \*

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the maximum speeds limits so long as he does not endanger life or property;

(4) Disregard regulations governing direction of movement or turning in specified directions.

(e) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals meeting the requirements of law, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

(f) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others. [Acts 1939, ch. 48, Section 25, p. 289; 1967, ch. 138, Section 2; 1981, P.L. 121, Section 1."

both Rohrkaste and the City by giving Rohrkaste's tendered Instruction No. 8 as the Court's Instruction No. 17. That instruction stated:

"In Indiana, the violation of a safety statute or regulation creates only a rebuttal [sic] presumption of negligence or contributory negligence. That presumption may be rebutted by showing that the act was justifiable or excusable under the circumstances. Thus, where a person disobeys a statute, he may excuse or justify the violation of civil action by sustaining the burden of showing that he did what would reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

The court fully and fairly instructed the jurors as to the effect of a statutory violation by either of the parties. The statutes involved were not so complicated that the jury could not understand them without detailed explanation by the court. To the extent any further explanation would have been helpful, Rohrkaste waived any error by failing to tender an acceptable instruction. *Campbell v. City of Mishawaka* (1981), Ind.App., 422 N.E.2d 334. Rohrkaste has shown no error.

D.  Burden of proving ambulance was on emergency run

■  Rohrkaste tendered an instruction which read as follows:

"The emergency vehicle statutes are plead in this case by the defendant as affirmative defenses and/or allegations of contributory negligence. The burden of proving such a defense is upon the defendant. Thus in this case the defendant has the burden of proving that the ambulance in question on November 19, 1981, at the time in question, was responding to an emergency call and was operating in an emergency. In the absence of such proof, the defend-

ant is not entitled to use the statutes cited, and in the event of such failure of proof, then the same rules of road apply to the ambulance as to every other vehicle."

The court deleted all but the underlined part of this instruction which it read to the jury as the Court's Instruction No. 13.

Of the five statutes on which the court instructed the jury, three might be classified as "emergency vehicle statutes"; IC 9-4-1-85; IC 9-4-1-25; IC 9-8-6-20. However, only IC 9-4-1-25 requires that the driver of an authorized emergency vehicle be responding to an emergency call before allowing the driver to exercise the statutory privileges, *e.g.*, proceeding through a red light. By contrast, IC 9-4-1-85 imposes a duty on every other driver to yield the right-of-way when an authorized emergency vehicle approaches giving audible signal by siren or displaying a flashing red light.[2] The duty is imposed without regard to whether the emergency vehicle is on an emergency run. IC 9-8-6-20 requires that emergency vehicles "... be equipped with a siren, exhaust whistle or bell capable of giving an audible signal [and] with signal lamps [with] sufficient intensity to be visible at 500 feet in normal sunlight." The statute then imposes upon drivers of other vehicles the duty to yield the right-of-way and stop when the signal equipment is used as prescribed. Again no requirement is stated that the authorized emergency vehicle be on an emergency run for the statute to apply.

The instruction as tendered by Rohrkaste was an inaccurate statement of the law. The absence of proof that the ambulance was on an emergency run at the time of the accident would not have denied the City the benefit of IC 9-4-1-85 and IC 9-8-6-20. The trial court is not required to give an instruction which does not state the law accurately. *See Jones v. City of Logansport* (1982), Ind.App., 439 N.E.2d 666. Ac-

---

**2.**  The court gave the City's Instruction No. 7 as the Court's Instruction No. 21 instructing the jury that the City's ambulance involved here was an "authorized emergency vehicle" under the

statutory definition. *See* IC 9-4-1-2. Rohrkaste's objection to this instruction is discussed *infra,* Issue II G.

cordingly, the court did not err by modifying Rohrkaste's tendered instruction.

E. Proximate cause

■■ Rohrkaste tendered the following instruction to the trial court:

"Not every act of negligence on the part of a plaintiff will bar a recovery if he is otherwise entitled to damages. His negligence will not defeat his right of recovery unless it proximately causes his injury providing he is otherwise entitled to damages under the law and the evidence. Likewise, the violation of a statute by a plaintiff will not defeat his recovery, unless the violation of the statute is the proximate cause of the injury. Therefore, if you find in this case that Kris Rohrkaste was guilty of negligence in some respect, and you further find that it was not a proximate cause of his injury, then I instruct you that such negligence would not bar a recovery by him if you find from a preponderance of the evidence under all of the court's instructions that he is otherwise entitled to damages."

He contends that the court's refusal to give this instruction was error.

Through other of its instructions, the court informed the jury of the nature of contributory negligence and that to constitute contributory negligence Rohrkaste's alleged failure to use reasonable care must have been a proximate cause of his injuries. Proximate cause was separately defined as was the relationship between a statutory violation and a finding of negligence or contributory negligence. A court does not err when it refuses to give a tendered instruction substantially covered by other instructions. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613. Here the court committed no error in refusing Rohrkaste's tendered instruction.

F. Authorized emergency vehicle

■■■ IC 9–4–1–2(d) defines "authorized emergency vehicle" as:

"(1) Vehicles of the fire department, police vehicles, and ambulances and other emergency vehicles operated by or for hospitals, or health and hospital corporations under IC 16–12–21.

(2) Vehicles other than ambulances which are owned by persons, firms, or corporations other than hospitals, and are used in emergency service, may be designated as emergency vehicles if such vehicles are authorized to operate as such by the department of highways as provided in this subdivision. The department is authorized and empowered to designate and authorize the operation of such other emergency vehicles pursuant to such rules as the department may prescribe.

(3) Ambulances which are owned by persons, firms, or corporations other than hospitals and which are approved by the Indiana emergency medical services commission. The commission is authorized to designate and authorize the operation of such ambulances pursuant to its rules."

Jim Snow testified for the City identifying himself as the Captain in charge of medical services for the Terre Haute Fire Department. He testified that the fire department offered an ambulance service and that the ambulance involved in the accident had been certified by the Indiana medical services commission. Rohrkaste did not cross-examine Snow on this issue or present other evidence disputing that the vehicle was an authorized emergency vehicle. Additionally, photographs of the ambulance admitted into evidence showed the words "Terre Haute Fire Dept. Emergency Ambulance" on one side of the ambulance.

The court gave the City's tendered Instruction No. 7 as follows:

"The Court instructs you that the ambulance of the City of Terre Haute which was involved in the collision giving rise to this lawsuit was at the time of such collision an 'authorized emergency vehicle' as defined by the Statutes and laws of the State of Indiana."

Rohrkaste objected at trial that this instruction unduly emphasized a particular facet of the City's case, saying:

"The statutes which were read to the jury by the court had adequate explanation as to the term 'authorized emergency vehicle' and this element should not have been emphasized to the jury. This argument is made specifically in regard to Defendant's Instruction Number Seven (7).

Further, said instructions specifically related to the testimony of one witness, that being, James Snow, from the City of Terre Haute, the court by granting this instruction emphasized the testimony of that witness and in fact said to the jury you must believe the testimony of James Snow.

Defendant's tendered instruction Number Seven (7) also created confusion to the jury, in that, an essential element of defendant's proof was whether the emergency vehicle in question was on an emergency run. The instruction was confusing and misleading, in that, that [sic] it allowed an inference be drawn that the court was telling the jury that it was being instructed at the time of the collision the emergency vehicle involved was on an emergency run as a matter of law."

Contrary to Rohrkaste's contentions, the term "authorized emergency vehicle" was not explained elsewhere in the instructions and was not emphasized unduly in this instruction. The instruction was a proper reflection of the fact that the evidence adduced at trial had established without dispute that the ambulance involved here was an authorized emergency vehicle by definition under the law of this state. It did not invade the province of the jury and was not error for the court to instruct the jury of the existence of an undisputed fact. *Davis Const. Co. v. Granite Sand & Gravel Co.* (1928), 90 Ind.App. 379, 163 N.E. 240; *Chicago, I. & C.R. Co. v. Stierwalt* (1926), 87 Ind.App. 478, 153 N.E. 807, *cert. denied* 278 U.S. 633, 49 S.Ct. 32, 73 L.Ed. 551. In addition, a party cannot complain of error in an instruction if he has tendered an instruction containing the same alleged error. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613. Rohrkaste tacitly admitted this fact by tendering his own Instruction No. 11, given as the Court's Instruction No. 19, which began by stating:

"The Plaintiff has the burden of proving the following propositions:

First: *That the operator of the Defendant's authorized emergency vehicle* was negligent in failing to drive with due regard for the safety of others as follows ...." (emphasis added)

Rohrkaste further contends the instruction confused the jury because "[I]t allowed an inference be drawn that the court was telling the jury that at the time of the collision the emergency vehicle involved was on an emergency run as a matter of law." While there was sufficient evidence the ambulance was in fact on an emergency run at the time of the accident, whether it was or not, the instruction given by the court raised no inference as to that conclusion. The instruction merely was an accurate statement that the ambulance was, by definition, an authorized emergency vehicle, a fact itself significant with respect to the traffic safety statutes read to the jury quite apart from whether or not the ambulance was on an emergency run. Rohrkaste has shown no error.

Accordingly, the judgment of the trial court is affirmed in all respects.

Affirmed.

HOFFMAN, J., concurs.

STATON, P.J., dissents and files separate opinion.

STATON, Presiding Judge, dissenting opinion.

I dissent from the Majority's treatment of the motion in limine. The motion in limine was never intended for use in a voir dire setting. Any attempt to place it in a setting other than a jury trial where evidence is being offered on the merits of an action destroys the entire concept of its origin and purpose. Any attempt to broaden its application to other phases of the trial obscures its meaningfulness and ra-

tionale for being a useful tool for the administration of justice.

My dissent necessarily incorporates the written objection made by Rohrkaste, since a motion in limine has no application to a voir dire setting. His written objection did not waive the error of the trial court when it sustained the motion in limine. The error was properly preserved for appeal. I would have reversed the trial court on this issue alone, since the error prevented Rohrkaste from obtaining and assuring himself that a fair and impartial jury had been selected.

The motion in limine granted by the trial court prohibited Rohrkaste's Counsel during "... *voir dire examination from asking any and all questions of the respective jurors directed to the area of interest that any such juror may have in an insurance company, particularly, such insurance company, United States Fidelity and Guaranty Company, (by way of example: questions as to whether any prospective jurors are an employee, has stock or any interest, or is insured by United States Fidelity and Guaranty Company).*" This is not the purpose of a motion in limine. Its purpose is to function in an evidentiary setting where a jury is determining the merits of factual issues. The purpose and function of a voir dire setting is to allow considerable latitude to counsel so that he may discover any interest, prejudice, or bias of prospective jurors. A fair and impartial jury is the purpose of voir dire not the exclusion or suppression of offers in evidence, prejudicial questions, or prejudicial statements. This is the purpose of the motion in limine.

In *Burris v. Silhavy* (1973), 155 Ind.App. 558, 293 N.E.2d 794, this Court explained the purpose of a motion in limine:

"The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on

the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach...."

293 N.E.2d at 796–7.

The use of a motion in limine in a voir dire setting is foreign to its purpose and incompatible with its function.

The use of a motion in limine is limited to the jury trial, and its use is further restricted to the exclusion of prejudicial matters. In *Baldwin v. Inter City Contractors Service, Inc.* (1973), 156 Ind.App. 497, 297 N.E.2d 831, this Court reversed a trial court that attempted to use a motion in limine in a matter that was being tried before the court rather than before a jury. In *Baldwin* this Court stated:

"This cause was being tried by a trial court. The trial court's ruling upon the 'motion in limine' excluded expert testimony as irrelevant. A 'motion in limine' has no place or use in this setting. *Its use is limited to the jury trial.* Secondly, this court has held that the 'motion in limine' has a very restricted use which flows from the trial court's inherent power. *This restricted use is to exclude prejudicial matters.* The exclusion by the trial court may encompass both prejudicial and irrelevant matter, but the primary purpose for granting the motion must be that the matter excluded would be prejudicial to the moving party. *Burrus v. Silhavy* (1973) [155] Ind.App. [558], 293 N.E.2d 794." (Emphasis original), 297 N.E.2d at 883–4.

It is error for a trial court to attempt an application of the motion in limine to a court trial. It is error for a trial court to attempt an application of the motion in limine to a voir dire setting.

An evidentiary setting is indispensable to the function of a motion in limine. Error can only be perfected for an appeal by objecting to the prejudicial matter when it

is offered in evidence. If the objection is sustained, an offer to prove must be made to complete the record for appeal. Justice DeBruler succinctly explained the function of the motion in limine and the perfection of error on appeal in *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. Justice DeBruler explained:

"The State counters that the evidence sought to be excluded by a motion in limine must be objected to at the time of its introduction at trial for any error in the denial of the motion to be preserved. This proposition is correct. *Morris v. State* (1977), [172] Ind.App. [509], 360 N.E.2d 1027; *Marsh v. Lesh* (1975), [164] Ind.App. [67], 326 N.E.2d 626. Appellant's motion sought to absolutely prohibit the State from using this evidence. For instructive purposes it should be noted at this point that it is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of evidence as was sought by appellant, but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. *Baldwin v. Inter City Contractors Service, Inc.* (1973), 156 Ind.App. 497, 297 N.E.2d 831."

Obviously, a motion in limine has absolutely no place in a voir dire setting where counsel is trying to discover conflicting interest, prejudice, or bias on the part of a prospective juror.

The trial court committed reversible error when it granted the City of Terre Haute's motion in limine in a voir dire setting. Rohrkaste should have been permitted to make a good faith inquiry into the interests of prospective jurors. Proper objections and instructions to the jury are the proper means to deflect inquiries which are inappropriate. I dissent and I would reverse.